The A. S. ABELL COMPANY, a body corporate, The Baltimore News-American, Division of Hearst Consolidated Publications, Inc., a body corporate, and The Daily Record Company, a body corporate, Appellees,

v.

BALTIMORE TYPOGRAPHICAL UNION NO. 12, Appellant.

No. 9563.

United States Court of Appeals Fourth Circuit.

Argued Sept. 21, 1964.

Decided Nov. 4, 1964.

Bernard W. Rubenstein, Baltimore, Md. (Jacob J. Edelman, Baltimore, Md., on brief), for appellant.

James P. Garland, Baltimore, Md. (William D. Macmillan, Earle K. Shawe, William J. Rosenthal, James J. Doyle, Jr., and Arthur U. Hooper, Baltimore, Md., on brief), for appellees.

Before SOBELOFF, Chief Judge, BRYAN, Circuit Judge, and SIMONS, District Judge.

SOBELOFF, Chief Judge:

Publishers of three daily newspapers in Baltimore—A. S. Abell Company (publishers of the Sunpapers), the Baltimore News-American and the Daily Record—entered into a collective bargaining agreement with the Baltimore Typographical Union No. 12, representing certain employees in the composing rooms of the respective publishers. The agreement was executed on August 14, 1962, and will expire on December 31, 1964. A dispute having arisen between the parties in April, 1964, the publishers brought an action against the union under section 301 of the Labor Management Relations Act, 61 Stat. 156 (1947) 29 U.S.C.A. § 185 (1956), to obtain enforcement of the agreement's grievance procedures and arbitration provisions. The District Court granted plaintiff's motion for judgment on the pleadings, ordered the union to arbitrate, and declined to stay its order pending appeal.

The dispute arose in the following circumstances. One of the publishers, A. S. Abell Company, has in its composing room twelve line-casting machines which are operated by perforated tape produced manually by teletypesetter keyboard tape-perforators. Under present procedures the employees operating the tape perforating units must perform an additional operation known as "justification and hyphenation," consisting of calculating and measuring the spacing of anticipated type characters so that the right hand edges of all columns of type will be uniformly even. All type for Abell's newspapers is set by this process, with the exception that its employees do not prepare tapes containing the financial market quotations and major league box scores. These are received, already justified and hyphenated, over wires of the Associated Press and United Press International.

Abell has recently acquired an electronic computer known as the RCA Newscom, which justifies and hyphenates tape. It is planned that the operators of the tape-perforators will prepare unjustified and unhyphenated tape to be fed to the computer. The computer will then perform the necessary calculations and make a new tape, perforated in such manner that when it is fed to the line-casting machine, that machine will produce hyphenated and justified columns of type.

Upon being notified of Abell's intention to install and operate the computer in its composing room, the union asserted that under the terms of the collective bargaining agreement, specifically the second paragraph of section 3(k) quoted below, the publishers could not install such computer without entering into negotiations. The union has maintained throughout that the preparation of unjustified and unhyphenated tape by its members would constitute "the use of tape not authorized by * * * [this] agreement * * *" and hence made by section 3(k) a matter for negotiation and not subject to arbitration.

With equal firmness, Abell, joined by the other publishers, has insisted that it is not seeking to "extend the use of tape not authorized by * * * [the] agreement * * *," since it is not attempting to introduce tape similar to that sent over the Associated Press and United Press International wires, on which financial market quotations and baseball box scores are received. The employers therefore argue that section 3(k) does not exclude the dispute from arbitration under the agreement.

The following are the pertinent provisions of the collective bargaining agreement:

"Section 3. In the event any Publisher shall introduce the Teletypesetter Keyboard tape-perforator and operating units as a means of producing type in their composing rooms the following shall apply:

*   *   *   *   *   *

"(k) Teletypesetter tape consisting of financial market quotations and Major League baseball box scores received over the regularly

leased wires of the Associated Press or the United Press International may be used. All other teletypesetter tape shall be perforated by employees covered by this agreement.
\* \* \*

"In the event the Publishers, during the life of this agreement, desire to extend the use of tape not authorized by this agreement, they shall notify the Union. Upon such notification the parties shall, without undue delay, enter into negotiations for the purpose of arriving at a mutual agreement concerning the matter, but disagreement thereon shall not be subject to the Code of Procedure or arbitration.

"Section 5. This contract alone shall govern relations between the parties on all subjects concerning which any provision is made in this contract, and any dispute involving any such subjects shall be determined in accordance with the Code of Procedure.

"Section 8. \* \* \* Both parties agree that whenever any differences of opinion as to the rights of either [Union and Publishers] under the Agreement shall arise, or whenever any dispute as to the construction of the contract or any of its provisions takes place, such difference or dispute shall be promptly resolved in the manner provided in this contract \* \* \*."

Sections 33–39, entitled "Code of Procedure," set up the steps to be taken in processing grievances and selecting a Board of Arbitration. Section 39 refers to arbitration of "differences in the interpretation and enforcement of the terms of this contract, *including the question of whether, under Section 5, the disputed issue is covered by the terms of this contract, and including the interpretation of all language contained in this contract.*" (Emphasis added.)

The District Court viewed the controversy as one solely of interpretation of the collective bargaining agreement. Nevertheless, at the hearing on the motion for judgment on the pleadings the court permitted the union to make a proffer of certain evidence which it would introduce should the case be decided on evidence in addition to the pleadings. The proffer pertained primarily to negotiations between the parties, particularly discussions leading to the drafting of section 3(k). The District Court rejected the proffer, stating that its decision would not be altered thereby, and on this ground denied the union the opportunity it sought to present such evidence at a trial. The court declared that upon consideration of the provisions of the agreement it was unable to say with positive assurance either that the controversy was covered by the arbitration clause or that it was clearly excluded therefrom. Therefore, the court concluded, the contract required a decision of this issue by the Board of Arbitration and not the court.

The union concedes that the District Court properly applied the appropriate legal principles in ruling on the motion. But it seeks reversal of the order on the sole ground that the District Court erred in declining to consider the proffered evidence of bargaining history. It thus states the question to be decided on appeal: "Did the District Court err in not considering evidence of bargaining history in order to decide whether an issue was excluded from arbitration under a collective bargaining contract?"

Abell, on the other hand, argues that both procedurally and as a matter of substantive law the exclusion of the testimony was proper and that the judgment on the pleadings and the order to arbitrate were proper. First, it says that since the case was heard on motion for judgment on the pleadings pursuant to Rule 12(c), Federal Rules of Civil Procedure, and since the pleadings raised no issue of fact, it was proper to enter judgment as a matter of law, without consideration of evidence of bargaining history. It further says that because of

doubts as to the meaning of the language used in the collective bargaining agreement, the Board of Arbitration and not the court should decide the question of arbitrability.

On a motion for judgment on the pleadings made pursuant to Rule 12(c), only the pleadings are considered, and thus the District Court, in considering only the complaint and answer and refusing to admit testimony of bargaining history, properly observed the scope of the motion before it.

Rule 12(c) also provides that:

" * * * If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to *and not excluded by the court*, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." (Emphasis added.)

Under a fair reading of this provision, admission of the testimony of bargaining history was not required, for the rule makes it discretionary with the court to exclude evidence of matters outside the pleadings. Only when the court's discretion is exercised in favor of the reception of the tendered evidence is the motion for judgment on the pleadings converted to one for summary judgment under Rule 56. Here, although the union "presented" matters outside the pleadings, the court, in its discretion excluded them. Thus, the latter language of Rule 12(c) was inapplicable.

But the decision need not rest on this basis. There is a broader ground upon which the court's action was soundly predicated. The rules announced by the Supreme Court in United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), and United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed. 2d 1409 (1960), and recently reaffirmed

in John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), unmistakably encourage the resolution of disputes arising under collective bargaining agreements by arbitration rather than by the court, including issues, such as we have here, as to whether a particular dispute is arbitrable under the terms of the agreement. In Warrior & Gulf, the Supreme Court made this clear by stating:

"An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. * * * " 363 U.S. at 582–583, 80 S.Ct. at 1353.

Here the District Court was unable to say with positive assurance that, even considering the proffered testimony, section 3(k) excluded the dispute from arbitration. It therefore ordered the union to comply with the arbitration procedures.

In Warrior & Gulf, the Supreme Court also stated that:

"In the absence of any express provision excluding a particular grievance from arbitration, we think *only the most forceful evidence* of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad. * * * " (Emphasis supplied.) 363 U.S. at 584–585, 80 S.Ct. at 1354.

Applying the above-quoted language to this case, the union contends that the District Court should have received its "most forceful evidence" of bargaining history purporting to show that the parties intended to exclude from arbitration the issue of plaintiff's right to justify and hyphenate tape by mechanical devices. Such a contention ignores the teaching of Warrior & Gulf, which favors arbitration where doubts arise as to the meaning of language used in the

collective bargaining agreement, particularly where, as in the present instance, the agreement is replete with indications that the parties broadly agreed upon arbitration of their disputes, and the exclusionary language of section 3(k) is vague and ambiguous. If indeed the union has "forceful evidence" of an exclusionary purpose this should be presented to the Board of Arbitration, which is expressly empowered to interpret the agreement, "including whether under section 5, the disputed issue is covered by the terms of this contract, and including the interpretation of all language contained in this contract." It is the Board of Arbitration who should make the determination of whether the controversy is subject to arbtration.

In support of its position the union cites Independent Soap Workers v. Proctor & Gamble Manufacturing Co., 314 F.2d 38 (9th Cir.), cert. denied, 374 U.S. 807, 83 S.Ct. 1696, 10 L.Ed.2d 1031 (1963), and Pacific Northwest Bell Telephone Company v. Communications Workers of America, 310 F.2d 244 (9th Cir. 1962). In Pacific, however, it was held that in determining whether a dispute is subject to arbitration, evidence of bargaining history is admissible only where judicial construction of the arbitration clause in question would not involve the resolution of the underlying dispute. Since in this case, in order to determine whether the dispute comes within the exclusionary provisions of section 3(k) or the arbitration clause, the court would necessarily have to determine the underlying issue of whether Abell's contemplated use of the computer would constitute an extension of "the use of tape not authorized by this agreement * * *," the District Court's action was not inconsistent with Pacific.[1] The Independent Soap case involved no problem of who was to decide the question of arbitrability. The debate there was whether one party could defeat the other party's demand for arbitration of an arbitrable dispute by refusing to stipulate the issue in accordance with the procedures laid down in the contract. It is also noteworthy that the parties agreed that the bargaining history should be considered by the court.

More enlightening for our purposes is International Union of Elec., Radio & Machine Wkrs. v. General Elec. Co., 332 F.2d 485 (2d Cir. 1964), where an employer, by introducing evidence of bargaining history, sought to escape the effect of a broad arbitration clause even though it could not point to an exclusionary clause clearly removing the dispute from the arbitrator's jurisdiction. The court stated:

> " * * * [W]hile this bargaining history may prove very useful to an arbitrator * * * it is of no legitimate use to a court in deciding whether to order the company to submit the grievance to an arbitrator. * * *" 332 F.2d at 490.

In addition to the Ninth Circuit in the Pacific case and the Second Circuit in the above-quoted case, two other circuits have passed directly on the issue of whether or not, in determining if the dispute before it is governed by the arbitration provisions of a collective bargaining agrement, a court may consider evidence of bargaining history. The Third

---

1. Compare the recent opinion of the Ninth Circuit on the second appeal in this case. Communications Workers of America v. Pacific Northwest Bell Telephone Company, 377 F.2d 455 (1964). In its more recent opinion the Ninth Circuit cites Maryland Tel. Union v. Chesapeake & Potomac Tel. Co., 187 F.Supp. 101 (D. Md.1960), as holding evidence of bargaining history admissible. In that case, Judge Thomsen, the same District Judge who decided the case now under review, did comment that he found it hard to believe that the Supreme Court, in Warrior & Gulf, meant that such history may never be considered by a court. However, his conclusion was that in what he deemed the "present uncertain state of the law" and because of the particular language of the agreement before him, the evidence of bargaining history should be considered by the arbitrator, not the court, and ordered arbitration of the dispute.

Circuit has held such evidence inadmissible, Ass'n of Westinghouse Salaried Emp. v. Westinghouse Electric Corp., 283 F.2d 93 (3d Cir. 1960), while the Seventh Circuit took a contrary view, Independent Petroleum Workers v. American Oil Co., 324 F.2d 903 (7th Cir. 1963) (cert. granted apparently on another point), 377 U.S. 930, 84 S.Ct. 1336, 12 L.Ed.2d 294 (1964). The contract in the instant case is more explicit than any of the decided cases in providing that the Board of Arbitration's authority extends to the question of whether a particular disputed issue is covered by the terms of the contract. See the language quoted above.

■■ If the meaning of section 3(k) as it pertains to the situation before us were entirely clear it would become the duty of the court to declare that meaning. But since we agree that the meaning is not clear beyond rational debate, we hold that the court correctly referred the issue of arbitrability to the tribunal the parties previously expressly agreed upon, namely, the Board of Arbitration itself. Both the language and the philosophy of the agreement make it the function of the Board of Arbitration to decide the issue of arbitrability.

We, of course, express no opinion on the merits of the controversy as to whether the Code of Procedure for arbitration or the exclusionary provisions of section 3(k) govern. We decide only that the Board of Arbitration is the proper tribunal for the resolution of this issue. Should the arbitrators decide that the proposed use of computers constitutes an extension of the use of tape beyond that authorized by the present agreement, it would then be for the parties to negotiate the terms upon which such new use would be permitted. Should the negotiations not result in an agreement, the impasse would not be resolved by the Board of Arbitration, for the agreement provides that such disagreement "shall not be subject to the Code of Procedure or arbitration."

Affirmed.