**LOCAL UNION NO. 24, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, an unincorporated association,**

v.

**The HEARST CORPORATION, BALTIMORE NEWS–AMERICAN DIVISION, a corporation.**

Civ. No. 16376.

United States District Court
D. Maryland.

May 24, 1965.

---

Thomas X. Dunn, Washington, D. C., for plaintiff.

Theodore Sherbow, Sherbow, Shea & Doyle, Baltimore, Md., for defendant.

THOMSEN, Chief Judge.

This is an action under section 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185, to secure enforcement of the arbitration provisions of the collective bargaining agreement between the parties. On April 20, 1965, defendant temporarily suspended publication of its newspaper and directed its employees not to report for work until further notice. Plaintiff contends that under the circumstances shown by the evidence the action of defendant in shutting down its operations and temporarily dismissing the electricians covered by the agreement between plaintiff and defendant was either a lockout or a layoff for a reason not permitted by the agreement, and constituted a breach of the agreement. Defendant disputes that contention. Plaintiff asserts and defendant denies that this dispute is a grievance or misunderstanding which is subject to arbitration under the provisions of the agreement.

## Facts

Defendant prints and publishes the News-American, a daily newspaper in Baltimore City.[1] Defendant, together with the A. S. Abell Company (Abell), publisher of the Sunpapers, and the Daily Record Company, publisher of the Daily Record, as a multi-employer bargaining unit, jointly entered into collective bargaining agreements with locals of the Typographical Union and the Teamsters Union, respectively.[2] Defendant has a separate agreement with an independent union representing its reporters and others, whereas some of Abell's editorial staff, reporters, clerical workers and maintenance employees are represented by the Washington Newspaper Guild. The agreement under consideration in the instant case is a separate agreement between plaintiff and defendant alone,

1. It is engaged in commerce within the meaning of 29 U.S.C.A. §§ 142 and 151.

2. See A. S. Abell Co. v. Baltimore Typographical Union No. 12, D.Md., 230 F. Supp. 962 (1964), affirmed 4 Cir., 338 F. 2d 190 (1964).

covering the few electricians employed by defendant to maintain and repair the electric and electronic equipment at defendant's plant.[3]

On April 20, 1965, defendant delivered the following letter or notice to each of its employees, including the electricians represented by plaintiff:

"The Washington Newspaper Guild Local 35, AFL–CIO began a strike against the Baltimore Sun on April 17, 1965.

"The Guild began and is now picketing the Sun plant.

"The Sun and the News American have a joint contract (amongst others) with each of the following unions: Baltimore Typographical Union No. 12 and Truck Drivers and Helpers Local Union 355.

"The Sun employees covered by the two enumerated contracts have refused to cross the Guild picket lines and report for work to the Sun plant.

"The News American deems such refusal a violation of the joint contracts with the unions above named, and is a threat to the interest of the Sun and News American in bargaining on a group basis.

"Under these circumstances, you are hereby notified that the News American is suspending publication temporarily.

"You are directed not to report for work until further notice after the completion of your present shift.

"Your compensation ceases as of the last shift worked.

"Your employment with this newspaper has not been terminated. The purpose of this notice is to advise you of a period during which there will be no work to be performed by those employees who are not specifically requested to work.

"We regret the result of the union's actions. However, we hope that this unfortunate strike situation will be terminated in the near future.

> "Sincerely,
> "William H. Mills
> "General Manager"

At the same time defendant delivered to certain of its employees, including accounting and bookkeeping personnel and the chief electrician, who although a member of plaintiff union was not covered by the collective bargaining agreement, an additional letter or notice which stated:

"Notwithstanding the general notification of publication suspension given our employees today, you are hereby instructed to continue on your regular employment schedule until such time as you are specifically notified of termination.

"Please report as usual on Wednesday, April 21st, and thereafter until further notice. * * * "

On April 22 Walter T. Skopp, plaintiff's business manager, notified Mills as follows:

"In accordance with the terms of our current collective bargaining agreement, Article IX and X thereof, IBEW Local Union No. 24 requests arbitration of your breach of our agreement by your unwarranted unilateral action in locking out our members because of dispute that Sun papers have with other labor organizations. In accordance with Article IX, Joseph Prestianni and Robert P. Arnold are appointed members of the Arbitration Board representing Local Union No. 24."

Mills replied by sending the following telegram to Skopp:

"Concerning your telegrams of April 21 and 22, it is clear that your Local has no labor dispute with News American. Our company had no work for members of your Local as a result of breach of contracts by Teamsters and ITU. As soon as work is available, your members will

---

3. Plaintiff is a labor organization within the meaning of 29 U.S.C.A. § 152(5).

be promptly recalled. Since Article IX of the contract is not applicable, you have no basis for demanding arbitration as attempted in your telegram of April 22. Please acknowledge receipt of this message and withdrawal of your request for arbitration."

Plaintiff filed its complaint in the instant action the following day.

Plaintiff has no contract or dispute with Abell, and none of its members have picketed the Sunpapers' plant.

### The Agreement

The collective bargaining agreement between plaintiff and defendant contains the following material provisions:

*"ARTICLE IX—ARBITRATION*

"It is agreed that in the event a grievance or misunderstanding arises out of and during the terms of this agreement, as provided for herein, that cannot be composed by the Union and the Publisher within a reasonable time, and which constitutes a matter subject to review, such grievance shall be submitted to arbitration. For the purpose of such arbitration, there shall be established for the particular grievance an arbitration board consisting of two persons selected by the Publisher, two persons selected by the Union, and a fifth person to be the impartial chairman of such board, to be selected by these four. * * * There shall be no lockout by the Publisher or strike or stoppage of work by the employees pending the arbitration decision. It is agreed that any difference arising incident to negotiation of the terms of a new agreement are not covered by this section; the sole purpose of which is

to make subject to arbitration grievances arising out of and during the terms of the agreement. * * *"

*"ARTICLE X—STRIKES AND LOCKOUTS*

"Section 1. There shall be no stoppage of work, either by strike or lockout during the term of this agreement or disputes over matters relating to this agreement. All such matters must be handled as stated in Article IX herein."

It will be noted that both sections are carelessly drawn; e. g., the word "terms" in the first sentence of Article IX is confusing, and the meaning of the material following the second "or" in the first sentence of Article X is not clear. The photographic copy of the agreement shows that the first sentence of Article X was a patchwork job.[4]

### Discussion

█ Whether or not the company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 547, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). However, as Judge Sobeloff noted in A. S. Abell Co. v. Baltimore Typographical Union No. 12, 4 Cir., 338 F.2d 190 (1964), the rules announced by the Supreme Court "unmistakenly encourage the resolution of disputes arising under collective bargaining agreements by arbitration rather than by the court, including issues, such as we have

---

4. The agreement also contained the following provision:

"*ARTICLE XII—GENERAL PROVISIONS*

"Section 1. It is agreed that fruitless controversies must be avoided, and every effort made to promote harmonious relations. To accomplish this, both

parties will in every instance give prompt attention to disputes and will, in good faith, settle all differences as provided by the terms of this contract. Under all circumstances, operations shall continue without interference or interruption until all differences are settled by conciliation or arbitration."

here, as to whether a particular dispute is arbitrable under the terms of the agreement. In Warrior & Gulf, the Supreme Court made this clear by stating: 'An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. * * *' 363 U.S. at 582–583, 80 S.Ct. at 1353." 338 F.2d at 193.[5]

Plaintiff argues that under the facts set out above defendant locked out its employees, including the electricians. On the other hand, defendant argues that "a lockout is an employer's withholding of work from his employees in order to gain a concession from them", Local 50, etc. v. General Baking Co., S.D.N.Y., 97 F.Supp. 73 (1951); that before defendant sent the notice of April 20 to its employees it had no dispute with or grievance against plaintiff or any of the employees represented by plaintiff; that its labor dispute was with the Typographical and Teamsters Unions; and that it is clear under the facts and the law that the electricians were not locked out. Plaintiff's first point is that the dispute as to whether or not there was a lockout of the electricians within the meaning of Article X of the agreement is arbitrable under the second sentence of Article X as well as under the more general provisions of Article IX.

Plaintiff also argues that even if defendant's action did not amount to a lockout of the electricians, nevertheless defendant's suspension of publication, shutting down its operations and temporarily dismissing its employees, including the electricians, was not only improper under the law but was a breach of the agreement between plaintiff and defendant. Since defendant contends that its suspension of publication was for a proper motive and permissible under the law and the agreement, plaintiff then argues that there is a dispute between the parties which amounts to "a grievance or misunderstanding arising out of and during the terms of this agreement * * * and which constitutes a matter subject to review"; and that under the provisions of Article IX, "such grievance shall be submitted to arbitration." Whether the asserted dispute is a grievance or misunderstanding which is required to be arbitrated by the provisions of Article IX requires a construction of the entire agreement in the light of the cases cited above.

In some of those cases the particular disputes involved were neither specifically included in the arbitration clause nor specifically excluded therefrom. It is not necessary to decide whether the arbitration clause in the agreement under consideration in this case is broader or less broad than similar clauses in other cases. It is different, and difficult to interpret with certainty.

The Court cannot say with positive assurance that the arbitration clause, Article IX, read along with Article X and the other provisions of the agreement, is not reasonably susceptible of an interpretation that covers the disputes asserted by plaintiff. The question whether such disputes are grievances or misunderstandings which are subject to arbitration is one of the questions which should be considered by the arbitrators.

The Court expresses no opinion on that question nor on the merits of any position taken by either side. All such questions are for the arbitrators, if they find the issues arbitrable under the agreement.

In its motion to dismiss, defendant argued that "[t]he allegations against defendant, if true, constitute an unfair labor practice within the exclusive jurisdiction of the National Labor Relations Board". Defendant did not brief or argue that point, but stated that it was not abandoned. Plaintiff admits that

5. See also C & P Tel. Co. v. Communication Workers of America, D.Md., 239 F. Supp. 334 (1965), and Maryland Tel. Union v. C & P Tel. Co., D.Md., 187 F.Supp. 101 (1960).

the alleged acts of defendant constitute an unfair labor practice; indeed, it has filed charges against defendant with the NLRB.[6] But it has been clearly held by the Supreme Court that the pre-emption doctrine of such cases as San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), does not apply in cases under sec. 301 of the L.M.R.A., 29 U.S.C.A. § 185, to enforce arbitration under a collective bargaining agreement. Smith v. Evening News Assn., 371 U.S. 195, at 197, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962).

Counsel should agree within four days upon an appropriate decree requiring arbitration.

6. The Court has considered the allegations of the charge filed by plaintiff with the NLRB on May 18, but does not feel that it prevents the prosecution of this action.