LOCAL UNION NO. 24, INTERNATION-
AL BROTHERHOOD OF ELECTRI-
CAL WORKERS, AFL-CIO, an unincor-
porated association, Appellee,

v.

The HEARST CORPORATION, BALTI-
MORE NEWS AMERICAN DIVI-
SION, a corporation, Appellant.

No. 10082.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 8, 1965.

Decided Nov. 2, 1965.

———◆———

Theodore Sherbow, Baltimore, Md.
(William A. Agee, and Sherbow, Shea
& Doyle, Baltimore, Md., on brief), for
appellant.

Thomas X. Dunn, Washington, D. C.
(Sherman & Dunn, Washington, D. C.,
on brief), for appellee.

Before SOBELOFF, BOREMAN and
BRYAN, Circuit Judges.

SOBELOFF, Circuit Judge:

The union brought suit in the District
Court under section 301 of the Labor
Management Relations Act, 29 U.S.C.A.
§ 185, to compel arbitration. The Dis-
trict Judge denied the motion of the
defendant newspaper to dismiss and or-
dered the parties to arbitrate pursuant
to a collective bargaining agreement exe-
cuted April 30, 1964.

The suit arises out of a notice sent by
the publishers of the News American to
members of the IBEW advising them
that there would be no work for an in-
definite period of time. A complete un-
derstanding of the case requires a brief
statement of its factual background.

The News American and the Sun-
papers are the two leading daily news-
papers in Baltimore. On April 17, 1965,
the Washington Newspaper Guild struck
the Sunpapers after months of fruitless
collective bargaining. Members of the
International Typographical Union and
Teamsters Union refused to cross the
Guild's picket line, and as a result the
Sunpapers was unable to continue opera-
tions and suspended publication.

The ITU and the Teamsters have joint
collective bargaining agreements with
the Sunpapers and the News American;
the contract of the IBEW is with the

News American alone. When the ITU and Teamsters refused to cross the Guild picket line, with the resulting shutdown of the Sunpapers, the News American, which had not been struck, notified its employees that the action of the ITU and the Teamsters (with which the IBEW was in no way connected) violated the no-strike provisions of the joint contracts and threatened the integrity of the multi-employer bargaining unit. The News American further notified its employees that it was suspending publication temporarily and that for a period of time there would be no work for them.[1]

Upon learning of the News American's suspension notice, the plaintiff union requested arbitration of the company's right under these circumstances to lock out members of the IBEW. The News American denied the request.

The pertinent provisions of the collective bargaining agreement are as follows:

### "ARTICLE IX—ARBITRATION

"It is agreed that in the event a grievance or misunderstanding arises out of and during the terms [sic] of this agreement, as provided for herein, that cannot be composed by the Union, and the Publisher within a reasonable time, and which constitutes a matter subject to review, such grievance shall be submitted to arbitration. * * * [Either party may request that the grievance be submitted to arbitration.] There shall be no lockout by the Publisher or strike or stoppage of work by the employees pending the arbitration decision. It is agreed that any difference arising incident to negotiation of the terms of a new agreement are not covered by this section; the sole purpose of which is to make subject to arbitration grievances arising out of and during the terms [sic] of the agreement. * * *

### "ARTICLE X—STRIKES AND LOCKOUTS

" * * * There shall be no stoppage of work, either by strike or lockout during the term of this agreement or disputes over matters relating to this agreement. All such matters must be handled as stated in Article IX herein."

■ The question presented to us is a very narrow one: Is the arbitration clause "susceptible of an interpretation that covers the asserted dispute? Doubts should be resolved in favor of coverage." United Steelworkers of America v. Warrior & Gulf Co., 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960); A. S. Abell Co. v. Baltimore Typographical Union No. 12, 338 F.2d 190, 193 (4th Cir. 1964); United Textile Workers of America, Local No. 120 v. Newberry Mills, Inc., 315 F.2d 217, 218 (4th Cir. 1963).

■ No provision in the contract defines "grievance" or "misunderstanding" or limits those terms in any way. Either party may request that a grievance be submitted to arbitration. The only matter specifically excluded from the arbitration provision is a dispute "incident to negotiation of the terms of a new agreement." This court cannot say that the company's right to lock out members of the IBEW is a matter excluded from arbitration, for the contract in very broad terms provides that there shall be no strike or lockout during the term of the agreement and that all disputes relating to the agreement must be submitted to arbitration.

It is true, as the employer contends, that there was no dispute between the News American and the IBEW prior to the company's decision to lock out the union's members. It must be conceded, however, that a bona fide dispute did exist between the parties once the union communicated to the employer its strong feeling that the employer had no right

---

1. An additional notice was sent to certain maintenance and clerical employees, informing them that they should continue to report to work.

under the contract to bar its members from their jobs.

The employer maintains that its letter to IBEW members telling them not to report for work did not constitute a "lockout." The employer cites several arbitration decisions to the effect that a lockout occurs only when an employer directs its employees not to report for work in order to gain a concession *from them*. In Re Great Atlantic & Pacific Tea Co., 33 Lab. Arb. 502 (1959); In Re Great Atlantic & Pacific Tea Co., 32 Lab. Arb. 838 (1959); In Re Mrs. Conkling's Bakery, 15 Lab. Arb. 168 (1950).[2] The union replies that this is too narrow a view of the term "lockout" as used in the agreement. It insists that when unoffending employees are told not to report for work because the employer voluntarily suspends operations in a strategic move to aid another employer in its dispute with other unions, this constitutes a "lockout" within the meaning of the collective bargaining agreement.

This court is not called upon either to accept or reject the views of the cited arbitrators on the facts before them. Indeed, it is not our function to pass on this issue on the facts before us, for such a determination is properly within the province of the arbitrator.

 The duty of this court is to decide only whether the arbitration clause of the collective bargaining agreement in this case can be reasonably interpreted to cover the dispute. United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S. Ct. 1358, 4 L.Ed.2d 1424 (1960); Drake

Bakeries v. Local 50, Bakery Workers, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962). We hold that there is a bona fide dispute over the interpretation of the agreement, and that Article IX clearly provides that such misunderstandings are to go to arbitration. Whether the particular conduct of the employer constitutes a "lockout" is one of the issues that the arbitrator has been empowered to decide.

The decision of the District Court is Affirmed.

2. A similar definition of the term "lockout" was adopted in Local 50, Bakery and Confectionery Workers v. General Baking Co., 97 F.Supp. 73 (S.D.N.Y. 1951). There the union brought suit for damages under section 301 against the company for an alleged breach of a no-lockout provision in a collective bargaining agreement. There was no contention before that court that the issue should be presented to an arbitrator. Furthermore, that case was decided many years before the Supreme Court espoused arbitration as the favored means of resolving disputes arising under collective bargaining agreements.