**LOCAL NO. 1434, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO**

v.

**E. I. du PONT de NEMOURS AND COMPANY et al.**

**Civ. A. No. 413–71–R.**

United States District Court,
E. D. Virginia,
Richmond Division.
Nov. 9, 1972.

Jay J. Levit, Richmond, Va., for plaintiff.

A. R. Bowles, Jr., Richmond, Va., for du Pont.

Parker E. Cherry, Richmond, Va., for Ampthill.

## MEMORANDUM

MERHIGE, District Judge.

The plaintiff, Local No. 1434, International Brotherhood of Electrical Workers, AFL–CIO (hereinafter "IBEW"), sues E. I. du Pont de Nemours and Company (hereinafter "du Pont") and Ampthill Rayon Workers, Inc. (hereinafter "Ampthill"), and seeks an order requiring du Pont to arbitrate a work assignment grievance. Jurisdiction is attained pursuant to § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185.

The gravamen of plaintiff's complaint and amended complaint is that a work assignment concerning certain electrical maintenance workers violates the recognition clause of the collective bargaining agreement between du Pont and IBEW and must, pursuant to the requirements of the bargaining agreement, be submitted to arbitration. Du Pont, on the other hand, contends that the union's grievance does not bring into dispute any provision of the contract and hence arbitration is not required. Additionally, du Pont contends that plaintiff is precluded by the doctrine of laches from so contending. Ampthill, a union representing certain of the employees not covered by the IBEW-du Pont agreement, was joined as a defendant on the grounds that the grievance is in essence one of representation, and its outcome is likely to affect Ampthill's interests.

Procedurally, the matter is now before the Court on plaintiff's motion for summary judgment, and du Pont's Rule 12 (b)(6), Fed.R.Civ.P., motion to dismiss the action for failure to state a cause of action. The facts are not generally in dispute and the matter is ready for disposition on the pleadings, exhibits and argument of counsel. The Court finds as follows:

On December 12, 1945, IBEW was certified by the National Labor Relations Board as the representative of certain employees of the du Pont Spruance Plant. The employee classification certified by the NLRB was subsequently, under date of March 10, 1966 and March 14, 1969, incorporated into the collective bargaining agreements between IBEW and du Pont. The pertinent provisions are as follows:

### ARTICLE I

Section 1. The term "employe" or "employes" as used herein shall mean those employes of the COMPANY who are included within the unit appropriate for collective bargaining purposes, established in an order of the National Labor Relations Board in Case No. 5–R–1892, bearing date of December 12, 1945, viz., all employes of the Electrical Maintenance Department of the Spruance Plant, Textile Fibers Department, E. I. du Pont de Nemours and Company, Ampthill, Chesterfield County, Virginia, including electricians, mechanics, helpers and oilers, but excluding clerical employes, electrical craft foremen, and all other supervisory employes with the authority to hire, promote, discharge, discipline, or otherwise effect changes in the status of employes or effectively recommend such action.

### ARTICLE II

Section 1. The COMPANY hereby recognizes the UNION during the term of this Agreement as the exclusive bargaining agency of its employes, as defined in Article I, Section 1, for the purpose of collective bargaining with respect to wages, hours and other conditions of employment.

Article V contains the following:

Any question as to the interpretation of this Agreement or as to any alleged violation of the terms of this Agreement, which is not otherwise settled to the mutual satisfaction of the parties hereto, shall at the request of either party be submitted to arbitration

· · ·

The conflict between the parties concerns the assignment of work on the lime scales located in the Nomex Plant of defendant du Pont. Electrical work in that area involves the electrical main-

tenance of instruments. Although IBEW claims that this work should be performed by members of its union, the work has, since 1945, been assigned to members of defendant Ampthill rather than IBEW.

On January 10, 1969, IBEW filed a petition with the NLRB to secure a transfer of instrument mechanics to its union. Its argument was based on the contention that over the years the work of many of the instrument mechanics had come to involve the same skills possessed by employees of the electrical department and that in fact some of the work is identical. The Regional Director of Region 5, NLRB, rejected this contention and denied IBEW's request on January 31, 1969.

The series of events precipitating the instant litigation began on January 14, 1969, although there is evidence to suggest that IBEW had been contending for some years prior that the work in question should be assigned to the electrical department. On that date, a grievance concerning the work assignment was instituted in accordance with the procedures of Article IV of the Agreement. Several meetings were held thereafter between IBEW and du Pont. Some four months thereafter (May 8, 1969), the company in a letter from its plant manager, L. D. Simmons, rejected the union's suggested changes.

On May 25, 1969, the union requested that the issue be arbitrated. IBEW's position was, in its written request of that date, succinctly stated as follows:

We contend that the company practice of assigning electrical work to other than electrical maintenance employees and the use of unilaterally established guide lines for that purpose erodes the Electrical Maintenance Unit, deprives employees therein work opportunities and the wages therefor established under the agreement, and violates the "Recognition" provision of the agreement.

A series of communications between union and company officials and attorneys followed, and on August 7, 1969, du Pont stated its contention that the matter was not arbitrable and refused to submit to arbitration.

■ A preliminary matter before the Court is du Pont's contention that IBEW's suit is barred by laches. It, however, has made no claim of undue prejudice occasioned by IBEW's alleged delay, nor has it presented any evidence which would support such a claim. Moreover, the question of laches is one which the Court of Appeals for the Fourth Circuit has held must be presented to the arbitration board, if arbitration is ordered, rather than to the Court. Tobacco Workers International Union, Local 317 v. Lorillard Corp., 448 F.2d 949 (4th Cir. 1971). Accordingly, laches is no bar to this action.

■ The standard that is to be applied in determining the instant issue has been established by the Supreme Court of the United States in the so-called Steelworkers' trilogy. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). In lengthy discussions of the concept of arbitration in the labor context, the Court concluded that the process is an essential ingredient of the collective bargaining process and should not be looked upon with the same suspicion that courts customarily afford commercial arbitration. As the Court noted, "[i]n the commercial case, arbitration is the substitute for litigation. Here arbitration is the substitute for industrial strife." United Steelworkers of America v. Warrior & Gulf Navig. Co., supra, 363 U.S. at 578, 80 S.Ct. at 1351 (1960).

■ The right to have a given issue submitted to arbitration is contractual in nature, arising from the collective bargaining agreement between the parties. Accordingly, the Court is guided by the intention of the parties as ex-

pressed in the agreement of the parties as to whether this work assignment grievance requires arbitration. The Court commences its consideration of the issue with full recognition of the principle that to insure that the policy supporting labor peace through private settlement of disputes be advanced, arbitration should be granted except where it clearly appears that the reluctant party did not agree to arbitrate the grievance. The Supreme Court in *Warrior & Gulf* stated the test thusly:

> An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. 363 U.S. at 582–583, 80 S.Ct. at 1353 (1959)

The Court further elaborated at pages 584–585, 80 S.Ct. at page 1354 as follows:

> In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad. 363 U.S. at 584–585, 80 S.Ct. at 1354.

The arbitration clause of the IBEW-du Pont agreement provides that "[a]ny question as to the interpretation of the Agreement or as to any alleged violations of the terms of this Agreement" must be submitted to arbitration. Despite defendant's protestations to the contrary, the Court cannot conceive of a clause with appreciably greater scope, at least as to matters found in the agreement. Du Pont's defense, however, is that there isn't anything in the agreement with reference to work assignments, including the Recognition Clause cited by IBEW.

■ The Court takes particular note of that aspect of the arbitration agreement which refers to "any question as to

interpretation of this Agreement." While it is clear that the duty, if any, of du Pont to arbitrate is an issue for the Court to decide, Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962), the quoted phrase also places some responsibility for determining arbitrability on the arbitrators themselves. A. S. Abell Co. v. Baltimore Typographical Union, 338 F.2d 190 (4th Cir. 1964); Local Union 24, I.B.E.W. v. William C. Bloom & Co., 242 F.Supp. 421 (D.Md.1965).

■ This dual role in determining arbitrability limits the inquiry which this Court must make. Du Pont has offered certain evidence (and moved the Court to order other admissions), as to the bargaining history of the contract between itself and IBEW. Although some courts have held such evidence to be relevant, Independent Petroleum Workers v. American Oil Co., 324 F.2d 903 (7th Cir. 1963), aff'd. by equally divided court, 379 U.S. 130, 85 S.Ct. 271, 13 L. Ed.2d 333 (1964), the Court of Appeals for the Fourth Circuit holds that it may be considered only by the arbitration board in a case such as this. A. S. Abell Co. v. Baltimore Typographical Union, *supra.* There the Court quoting from a Second Circuit case, International U. of Elec., R. & M. Wkrs. v. General Elec. Co., 332 F.2d 485, 490 (1964), stated: "bargaining history may prove very useful to an arbitrator . . . it is of no legitimate use to a court in deciding whether to order the company to submit the grievance to an arbitrator." See also, Local Union 24, I.B.E.W. v. William C. Bloom & Co., *supra.* Accordingly, du Pont's contentions that the bargaining history represents "forceful evidence" of a purpose to exclude work assignments is an approach that may be utilized in arbitration which this Court is satisfied must be ordered.

■ The case authority convinces the Court that where the Court has legitimate doubts as to whether a particular grievance is covered by the contract, then arbitration must be ordered

as to that issue, unless it appears that there is a lack of sufficient merit to the claim that the controversy arises under the contract as to create no reasonable doubt concerning the parties intentions in drafting the contract. Arbitration, of course, cannot be ordered merely because one party alleges a contract violation. See Independent Petroleum Workers v. American Oil Co., *supra*. If the arbitrators find the grievance to be covered by the agreement, then they may proceed to arbitrate the merits. If the party's claim that the grievance arises under the contract is not frivolous, then arbitration must be ordered. If, however, it is "clear beyond rational debate" that the grievance does not arise under the contract, then arbitration may not be ordered. A. S. Abell Co. v. Baltimore Typographical Union, *supra*, 338 F.2d at 195.

 Given the standard that must be applied, it is the rare case in which arbitration would not be ordered where the arbitration clause is as broad as the one found in the IBEW-du Pont contract. While a careful examination of the collective bargaining agreement gives rise to some doubt in the Court's mind that the grievance arises under the contract, especially in view of the failure of the contract to define the union's representation in terms of the type of work to be performed rather than by an enumeration of the employees concerned, nevertheless the Court cannot say that its doubts are "clear beyond rational debate." It is not this Court's function to substitute its views for that of the arbitrators.

The fact that the NLRB has already decided in the 1969 petition for clarification basically the same issue as that which IBEW seeks to arbitrate is no bar to the Court ordering arbitration. Carey v. Westinghouse Elec. Corp., 375 U.S. 261, 272, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964), establishes that arbitration is not barred in a representational dispute simply because the NLRB has jurisdiction. Two potential remedies are available, if the parties intended that an issue be arbitrated. The proceeding before the Regional Director was administrative only and has no collateral estoppel effect. International Union of Elec., Radio and Mach. Wkrs. v. General Elec. Co., 407 F.2d 253, 264 (2d Cir. 1968); NLRB v. Baltimore Transit Co., 140 F. 2d 51, 54–55 (4th Cir. 1944).

As the Court has already stated, its function is limited to deciding whether there is a reasonable doubt as to the parties intentions as to arbitration and whether the arbitration board has the power to hear the issue. Both questions being answered affirmatively, arbitration will be ordered.

An order in accordance with this memorandum will issue.