**WARD FOODS, INC. and Ward Baking Company, Inc., Plaintiffs,**

v.

**LOCAL 50, BAKERY AND CONFECTIONERY WORKERS UNION, AFL–CIO, Defendants, (two cases).**

Nos. 73 Civ. 1329, 73 Civ. 2141.

United States District Court, S. D. New York.

July 2, 1973.

Jackson, Lewis, Schnitzler & Krupman, New York City, for plaintiffs; Roger S. Kaplan, New York City, of counsel.

O'Dwyer & Bernstien, New York City, for defendants; Howard N. Meyer, New York City, of counsel.

### MEMORANDUM DECISION

ROBERT L. CARTER, District Judge.

The plaintiffs have brought two separate actions pursuant to § 301 of the National Labor Relations Act, 29 U.S.C.

§ 185, and 28 U.S.C. § 2201[1] for a declaratory judgment that no valid agreement to arbitrate exists between the parties. The defendant answered the complaints by general denial and, in addition, petitioned the court to refer the controversy to arbitration pursuant to the Arbitration Act, 9 U.S.C. § 4. That statute, however, requires the court, and not the arbitrator, to determine whether an agreement to arbitrate existed. Of course, this is precisely the same question which plaintiffs seek to have answered in the original complaints, and, therefore, the court ordered a full evidentiary hearing of this issue alone.

Ward[2] and Local 50 have a long history of collective bargaining association going back at least until February 25, 1966. Apparently (I can only infer from the facts before me), the last major full-scale contract between the parties was consummated in 1968 and provided that it would be binding "until October 3, 1970 and thereafter until a new Agreement . . . has been consummated and signed or until this Agreement, upon sixty (60) days written notice, has been terminated by the Union or has been terminated by the Employer." Article L, 1968/70 Agreement.

On November 16, 1970, the parties executed a written extension of the 1968/70 Agreement providing that "Except as hereinafter provided, each provision of the 1968/70 Agreements . . . between the Employer and Union, shall be extended for the two (2) year period, to and including September 30, 1972." ¶ 1, 1970/72 Agreement. This extension agreement, though altering various conditions of employment, made no change in the 60 day notice of termination provision contained in Article L of the 1968/70 Agreement. It is conceded, therefore, that ¶ 1 of the 1970/72 Agreement incorporated that provision within its terms.

On July 28, 1972 (more than 60 days prior to September 30, 1972) the Union, by its President, Tim McIntyre, notified Ward of its desire to terminate the collective bargaining agreement then in existence (Def. Exhibit K), and subsequently notified federal and state mediation services that "written notice of the proposed termination or modification of the existing collective bargaining contract was served upon the other party to this contract and that no agreement has been reached" (Def. Exhibit L). Both of these notices were also in conformance with the requirements of the National Labor Relations Act, 29 U.S.C. § 158(d).

The 1970/72 Agreement was a written contract with specific provisions for its termination. It would continue indefinitely *unless* one of two contingencies occurred—either one party served upon the other a 60 day notice of intent to terminate or the parties "consummated and signed" a new agreement. It is undisputed that at no time did the parties enter into any formal written extension of the 1972 Agreement or enter into any new written contract. It is also undisputed that the union itself served a notice of intention to terminate the contract within the 60 day time span required to render such notice a valid termination of the Agreement. Thus, the union effectively triggered the contractual mechanism which brought an end to the Agreement on September 30, 1972.

The union now wants to pass its act off as "a mere formality, a technicality," Letter to the Court from Howard Meyer, Esq., Attorney for the Defendant, June 19, 1973. As was recognized in M.K. & O. Transit Lines, Inc. v. Division No. 892, Amalgamated Assoc. of Street, Electric Railway and Motor Coach Employees of America, 319 F.2d 488 (10th Cir.) cert. denied, 375 U.S.

---

1. The two cases, 73 Civ. 1329 and 73 Civ. 2141, were consolidated by the court.

2. Ward Foods, Inc. and Ward Baking Company, Inc. are parent and wholly-owned subsidiary, respectively. For convenience the plaintiffs will hereinafter be referred to in the singular as "Ward".

944, 84 S.Ct. 350, 11 L.Ed.2d 274 (1963), however, it may well be that such notice is sent out as a matter of course, but that does not strip it of legal significance. By that notice the union successfully avoided being bound into a contract beyond September 30, 1972—it also accomplished the same result for the employer. The contract having terminated on September 30, 1972, the arbitration agreement contained therein also lapsed and the employer was not required to (though, of course, he could) send controversies arising after termination to arbitration for resolution. Flight Engineers International Association v. Eastern Air Lines, Inc., 359 F.2d 303, 309 (2d Cir. 1966); M.K. & O. Transit Lines, Inc. v. Division No. 892, etc., *supra.*

In this case, there are essentially two issues which the union seeks to arbitrate. Both, however, arose after September 30, 1972 when, as has been indicated, the Agreement and the arbitration clause had lapsed. The first (73 Civ. 1329) involves severance pay consequent to termination of employees as a result of Ward's sale of its business to a third party. That sale, and therefore the termination for which severance pay is demanded, occurred after the termination of the contract. Therefore, this controversy is not covered by the arbitration agreement in the 1970/72 Agreement.

The second issue (73 Civ. 2141) is whether the plaintiff is required to contribute certain increases in welfare and pension fund payments which were later agreed to between the union and the New York City Bakery Employers Labor Council. The plaintiff was not a member of the Council but defendant claims that the plaintiff, through its Vice President, Mr. Kommer, agreed orally to be bound by the union/Council contract. Inasmuch as the Council and the union did not consummate their agreement until January 1973, the controversy between the parties here revolves around events occurring after the termination of the 1972 Agreement and, therefore, arbitration cannot be compelled.

One thing more ought to be added to make crystal clear the court's position. This is not a case where the parties had failed either to reach a new agreement or to serve the required notice of termination. In such a case the 1972 Agreement would have continued in full force and effect binding the parties to its terms. That Agreement, being written, would have continued to control the collective bargaining relationship of the parties and the defendant would have had all of its remedies for a breach of a written contract even if the complained of acts occurred after September 30, 1972.

▪ The defendant, however, claims that a contract between the parties did exist after September 30, 1972. In support of this position it refers to certain oral representations of the employer's representative and certain actions of the employer which were, even after the alleged termination of the Agreement, in conformance with the provisions of that Agreement. Neither of these contentions, even if conceded to be true, satisfies the contractual and statutory prerequisites. In the first place, the contract itself—Article L—indicates that a "new Agreement" must be "consummated *and signed*" (emphasis added), thus, impliedly recognizing that it must be in writing. Secondly, the statute upon which plaintiff relies to compel arbitration is available only to a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a *written* agreement for arbitration. . . ." 9 U.S.C. § 4 (emphasis added). The statutory requirement of a writing is not mere surplusage and has repeatedly been given effect by the courts: Fisser v. International Bank, 282 F.2d 231 (2d Cir. 1960); In re Superior Shipping Co., 274 F.Supp. 25 (S. D.N.Y.1967).

The defendant, unable to demonstrate the existence of a written contract, is not entitled to an order directing the parties to proceed to arbitration. On the other hand, the plaintiff is entitled to a finding that no written collective

bargaining contract existed after September 30, 1972.

Finally, it should be emphasized that the court here has only determined that no written agreement existed between the parties sufficient to compel the plaintiff to submit the controversies here in question to arbitration. The court has not decided and takes no view as to the existence or enforceability of any contractual relationship between the parties arising out of conversations, oral agreements or understandings.

So ordered.