**LOCAL NO. 358, BAKERY AND CONFECTIONERY WORKERS INTERNATIONAL UNION**

v.

**NOLDE BROS., INC.**

Civ. A. No. 73-663-R.

United States District Court, E. D. Virginia, Richmond Division.

Sept. 19, 1974.

Jay J. Levit, Richmond, Va., for plaintiff.

Francis V. Lowden, Jr., Jay J. Swett, Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

This matter arises out of plaintiff Local No. 358, Bakery and Confectionery Workers International Union's ("the union") voluntary termination of its collective bargaining agreement with defendant Nolde Brothers, Inc. ("the company"), and the company's subsequent permanent closure of its Norfolk bakery on August 31, 1973, three days subsequent to the termination of the collective bargaining agreement. Despite the fact that there was no collective bargaining agreement in existence on August 31, 1973, when the company ceased operations, the union asserts that its newly unemployed members were entitled to collect severance pay, which had been provided for in Article IX, § 5 of the collective bargaining agreement or, alternatively, that the company was under a contractual obligation to arbitrate the severance pay issue. The company resists both these contentions and further attacks the union's assertion that this Court has jurisdiction under § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, and under the United States Arbitration Act, 9 U.S.C. § 4.

Each party has filed a motion for summary judgment, and the matter is now ripe for disposition.

The facts are undisputed: The union and the company entered into a collective bargaining agreement on July 28, 1970, having an expiration date of July 21, 1973, and containing the severance pay and arbitration clauses here at issue.[1] By the terms of Article XIX the

1. . . . Article IX—*Wages*
Section 5. Each full-time employee who is permanently displaced from his employment with the Company by reason of the introduction of labor saving equipment, the closing of a department, the closing of an entire plant, or by lay off, shall be compensated for such displacement providing he has been actively employed by the Company for a period of at least three (3) years. An eligible employee's compensation for his displacement shall be on the basis of thirty (30) hours of severance pay, at his straight time hourly rate, for each full year or major portion of a year of active employment commencing with the fourth (4th) year following his most recent date of hire. Payment under this formula shall be limited to a maximum of nine hundred (900) hours of severance pay.

. . . Article XII—*Grievances and Arbitration*
Section 1. All grievances shall be first taken up between the Plant Management and the Shop Steward. If these parties shall be unable to settle the grievance, then the Business Agent of the Union shall be called in, in an attempt to arrive at a settlement of

agreement was to remain in full force and effect after July 21, 1973, until a new agreement had been reached and executed, or until either the union or the company terminated the agreement by giving seven days written notice.

On May 16, 1973, the union advised the company, pursuant to § 8(d) of the National Labor Relations Act, that it wished to negotiate certain changes in the existing contract. There followed three months of fruitless negotiations which culminated in the union's giving the company the seven days written notice as required by Article XIX to terminate the contract on August 21, 1973. At a bargaining session held August 31, 1973, the union rejected the company's last offer and stated that it would strike unless the company agreed to its most recent offer. The company thereupon gave notice that it would permanently close its Norfolk bakery and subsequently paid wages and accrued benefits, including vacation pay for vacations earned and due employees, as of August 27, 1973, and additionally paid wages due for any work performed by its employees between August 27, 1973 and the permanent closing date.

Subsequent to August 31, 1973, the union made a demand for severance pay, labeling such either "deferred wages" or a "vested right" established by the terminated contract, and further demanded that the company arbitrate the issue. The company refused to entertain the union's claim for severance pay or, in the alternative, to arbitrate the dispute, asserting that both severance pay and

arbitration were rights created solely by the collective bargaining agreement. The company took the position that the union's voluntary termination of the contract on August 27, 1973, deprived its employees of any right to severance pay due under it as a result of the company's plant closure and any right to have the severance pay dispute submitted to arbitration.

The parties present to the Court for resolution two related issues: Whether employees who voluntarily through their union terminate a collective bargaining contract, containing severance pay and arbitration provisions, at the expiration of the contract period are entitled to (1) severance pay, and (2) the right to have the severance pay dispute submitted to arbitration when the employer subsequently closes the plant and terminates the employment of its employees. Because of the Court's disposition of the severance pay issue, it will be unnecessary to resolve the question whether arbitration rights survive the expiration of the collective bargaining agreement which created them.

## A.  JURISDICTION

■ The union asserts that the right of the company's employees to severance pay was created and vested in them by the collective bargaining contract. The claim of a contract between an employer and a labor organization confers jurisdiction under § 301(a) of the Labor-Management Relations Act, although the plaintiff must prove the existence of the contract to obtain relief. Genesco, Inc.

the grievance. If these parties are unable to settle the grievance, the dispute will be settled as called for in Sections 2 and 3 of this Article.
Section 2. In the event that any grievance cannot be satisfactorily adjusted by the procedure outlined above, either of the parties hereto may demand arbitration and shall give written notice to the other party of its desire to arbitrate. No individual employee shall have the right to invoke arbitration without the written consent of the Union. The Arbitration Board shall consist of three (3) persons, one selected by the Company and one selected by the Union. The two

persons selected shall agree upon a third person who shall act as Chairman of the Arbitration Board.
Section 3. The decision or award of the Arbitration Board, or a majority thereof, shall be final and binding on both parties. If the third party to arbitration is not selected in ten (10) days from receipt of notice, the Director of the U. S. Conciliation Service shall be requested to make the appointment. The expense of the neutral arbitrator shall be borne equally by the parties.
Section 4. Pending negotiations or during arbitration there shall be no strikes, lockouts, boycotts, or any stoppages of work.

v. Joint Council 13, United Shoe Workers of America, 341 F.2d 482, 484 (2d Cir. 1965).[2]

### B. CHOICE OF LAW

█ Federal law provides the beacon to guide the lower federal courts in fashioning the law of the collective bargaining agreement. Textile Workers v. Lincoln Mills, 353 U.S. 448, 456, 77 S.Ct. 923, 1 L.Ed.2d 972 (1953). The Court undertakes its responsibility to fashion the common law of the collective bargaining agreement, however, with full awareness that *Lincoln Mills* does not "envision any free-wheeling inquiry into what the federal courts might find to be the most desirable rule, irrespective of congressional pronouncements." Howard Johnson v. Detroit Local Joint Executive Board, 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974).

### C. ENTITLEMENT TO SEVERANCE PAY

"Severance Pay" as defined by Article IX, § 5 of the collective bargaining agreement is the right of full time employees who have been actively employed by the company for at least three years to obtain compensation from the company upon displacement from employment by the "introduction of labor saving equipment, the closing of a department, the closing of an entire plant, or by layoff." The plaintiff union proceeds from the premise that severance pay is an "earned" or "vested" right. As evidence in support of this contention, it points out that the severance pay clause appears in Article IX, entitled "Wages," of the collective bargaining agreement and urges that severance pay is earned by the employees of the company and accrue to them in the same manner that the hourly wage is earned and likewise accrues. See, United Steelworkers of America v. H. K. Porter Co., 64 LRRM 2201 (W.D.Pa.1966), where the court said that " . . . [t]he rights of the employees to such benefits as severance and vacation pay and pensions do not automatically terminate upon the expiration of the agreement establishing them. John Wiley & Sons v. Livingston, 376 U.S. 543 [84 S.Ct. 909, 11 L.Ed.2d 898] (1964). They are vested rights and their benefits may well come to fruition at a time beyond the term of the agreement establishing them." 64 LRRM at 2202–03.[3]

█ The Court, however, must reject the union's major premise that the severance pay in issue constitutes an "earned" or "vested" right. The union's voluntary termination of its collective bargaining agreement with the company on August 27, 1973, in the Court's view, destroyed any right to severance pay created by the collective bargaining agreement for displaced employees.

2. Since the Court holds herein that the union can show no arguable contractual entitlement to severance pay and that therefore there is no arbitrable severance pay dispute between the union and the company, it will be unnecessary to decide whether the union can obtain jurisdiction to compel arbitration under 9 U.S.C. § 4. The Court notes, however, that a written agreement to arbitrate is a prerequisite to the Court's taking jurisdiction under 9 U.S.C. § 4, and the Court has determined that there was no written contract in effect between the union and the company, when the company gave notice on August 31, 1973, of its intention to permanently close its Norfolk bakery. See Proctor & Gamble Independent Union v. Proctor & Gamble, 312 F.2d 181, 186 (2d Cir. 1962) ; Local Union No. 998 v. B. & T. Metals Co., 315 F.2d 432, 435–436 (6th Cir. 1963) ; Ward Foods, Inc. v. Local No. 50, Bakery and Confectionery Workers Union, 360 F. Supp. 1310, 1312 (S.D.N.Y.1973).

3. The Court does not believe that United Steelworkers of America v. H. K. Porter Co., 64 LRRM 2201 (W.D.Pa.1966), governs the precise facts here at issue. There, the collective bargaining agreement terminated on its expiration date—not by the union's voluntary act of giving written notice, as in the instant case—during the course of contract negotiations, and the court apparently thought that the union's pension, vacation and severance pay rights were arguably vested by the collective bargaining agreement such that an arbitrable issue was preserved by the particular facts of that case. The *Steelworker's* court entered an arbitration order without expressing any opinion on the merits of the union's claim to severance pay, vacation pay, and pension rights.

The Court is not precluded by the fact that the severance pay clause is to be found in the article of the collective bargaining agreement entitled "Wages" from finding, as it does, that severance pay is not an earned or vested right. Mere labels are not always dispositive of legal relations between litigants, and courts often find it necessary to cut through the form in order to discover the substantive relations which lay beneath.

■ The Court rejects the contention that severance pay constitutes earned but deferred income. In the instant case, only certain employees were eligible for severance pay, they being those who had more than three years continuous employment with the bakery, and those eligible could obtain severance pay in only certain specified instances— when an employee is "permanently displaced from his employment with the company by reason of the introduction of labor saving equipment, the closing of an entire plant, or by layoff." Thus severance pay may be likened to an employee insurance policy to help ameliorate the disruptions caused by technological innovation or economic recession and smooth the displaced employees transition to new employment. The right to collect severance pay, like the right to collect on an insurance policy, is contingent upon the happening of the event in question—here a job layoff, a plant closure, or the introduction of labor saving machinery—during the contract period. With severance pay, as with insurance, where the employee (or the insured) terminates the contract, the right to collect disappears.

■ Furthermore, severance pay is wholly a creation of the collective bargaining agreement and has no independent existence apart from that agreement. See Milk Drivers v. Thompson's Dairy, 80 LRRM 3403, 3404 (D.D.C. 1972), aff'd per curiam, 489 F.2d 1272 (D.C.Cir.1974); cf. Patterson Parchment Paper Co. v. International Papermakers, 191 F.2d 252 (3d. Cir. 1951). Severance pay provisions in a collective bargaining contract can be altered, modified, or terminated at the will of the parties. By terminating the contract in order to free itself of the no-strike clause as a prelude to calling a strike, as was its right so to do, the union gave up those benefits which were contingent upon the existence of a contract in the hope of securing more lucrative benefits by the application of economic pressure. The union cannot, however, jettison its contract when preparing to strike and then seek its protection once the company brings its own economic weapons into the fray. The union, to adopt a familiar phrase, cannot have its cake and eat it too under the umbrella protection of our national labor laws. Once having abandoned the protection of the contract to resort to legitimate economic struggle in order to improve the wages and working conditions of its membership, it will not be heard to complain when the company, finding itself unfettered by contract, retaliates with legitimate economic countermeasures. Cf. American Shipbuilding Co. v. N. L. R. B., 380 U.S. 300, 310–312, 85 S.Ct. 955, 13 L.Ed.2d 855 (1965).[4]

The Court is satisfied that to hold severance pay a "vested" or "earned" right and breathe into it an existence apart from the collective bargaining contract would be to upset the congressionally created balance between union and employer. This it is loathe to do absent a more explicit directive from the national legislature.

■ Having concluded that the union voluntarily terminated the contract upon which their right to severance pay was founded, thus destroying any entitlement to severance pay upon the company's subsequent plant closure, the Court finds it unnecessary to decide

4. On the other hand, if the union is claiming that the company closed its Norfolk bakery in order to chill unionism in its other plants, rather than out of legitimate economic motives, the proper forum is the Labor Board, not this Court. See Textile Workers Union v. Darlington Mfg. Co., 380 U.S. 263, 85 S. Ct. 994, 13 L.Ed.2d 827 (1965).

the question whether the plaintiff's right to arbitrate the severance pay issue survived the expiration of the contract—there being no severance pay issue to arbitrate. The Court notes, however, that the same considerations which compelled its decision that the plaintiff had no right to severance pay would also compel a holding that the plaintiff has no right to submit the severance pay controversy to arbitration. The duty to arbitrate is created by contract and "[n]o obligation to arbitrate a labor dispute arises solely by operation of law." Gateway Coal Co. v. U. M. W., 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583 (1974). Since the severance pay issue in this case arose after the expiration of the contract upon which the right to arbitrate was founded, the company had no obligation to submit the dispute to arbitration.

Accordingly, the company's motion for summary judgment will be granted, the union's cross motion for summary judgment will be denied, and the complaint will be dismissed for failure to state a claim upon which relief can be granted.

An appropriate order shall enter.