LOCAL NUMBER 358, BAKERY &
CONFECTIONERY WORKERS
UNION, AFL–CIO, Appellant,

v.

NOLDE BROTHERS,
INCORPORATED,
Appellee.

No. 74–2285.

United States Court of Appeals,
Fourth Circuit.

Argued April 8, 1975.

Decided Oct. 23, 1975.

Certiorari Granted May 19, 1976.
See 96 S.Ct. 2165.

Aldrich, Senior Circuit Judge, filed
concurring opinion.

Widener, Circuit Judge, filed concur-
ring and dissenting opinion.

Ronald Rosenberg, Washington, D. C. (Henry Kaiser, Van Arkel, Kaiser, Gressman & Rosenberg, Jery D. Anker, Lawrence J. Sherman, Lichtman, Abeles, Anker & Nagle, Washington, D. C., Jay Levit, Stallard & Levit, Richmond, Va., on brief), for appellant.

Francis V. Lowden, Jr., Richmond, Va. (Abram W. Vandermeer, Jr., Hunton, Williams, Gay & Gibson, Richmond, Va., on brief), for appellee.

Before ALDRICH, Senior Circuit Judge,* and CRAVEN and WIDENER, Circuit Judges.

CRAVEN, Circuit Judge:

In 1970 Nolde Brothers, Inc. and Local No. 358 of the Bakery and Confectionery Workers International Union entered into a collective bargaining agreement covering the employees at the company's Norfolk bakery. The agreement provided for severance pay upon the closing of the bakery for each employee actively employed by Nolde for at least three years,[1] and also contained an all-encompassing arbitration clause.[2]

On August 21, 1973, following several months of fruitless negotiations over proposed changes in the contract, the Union gave the seven days written notice required to terminate the agreement. Negotiations continued for a few days after the termination, but on August 31, the company, faced with the Union's threats to strike over certain contract demands, permanently closed the bakery. Nolde subsequently paid wages and vacation pay accrued through the date of the contract termination, and in addition paid wages for the few days between contract termination and the August 31 closing. But the company rejected the Union's demand that it either give severance pay to all its employees or arbitrate its duty to do so.

The Union then instituted this suit under Section 301 of the Labor Manage-

---

* First Circuit, Sitting by Designation.

1. Article IX. Wages.

> . . . . .
>
> Section 5. Each full-time employee who is permanently displaced from his employment with the Company by reason of the introduction of labor saving equipment, the closing of a department, the closing of an entire plant, or by lay off, shall be compensated for such displacement providing he has been actively employed by the Company for a period of at least three (3) years. An eligible employee's compensation for his displacement shall be on the basis of thirty (30) hours of severance pay, at his straight time hourly rate, for each full year or major portion of a year of active employment commencing with the fourth (4th) year following his most recent date of hire. Payment under this formula shall be limited to a maximum of nine hundred (900) hours of severance pay.

2. Article XII. Grievances and Arbitration.

> Section 1. All grievances shall be first taken up between the Plant Management and the Shop Steward. If these parties shall be unable to settle the grievance, then the Business Agent of the Union shall be called in, in an attempt to arrive at a settlement of the grievance. If these parties are unable to settle the grievance, the dispute will be settled as called for in Sections 2 and 3 of this Article.
>
> Section 2. In the event that any grievance cannot be satisfactorily adjusted by the procedure outlined above, either of the parties hereto may demand arbitration and shall give written notice to the other party of its desire to arbitrate. No individual employee shall have the right to invoke arbitration without the written consent of the Union. The Arbitration Board shall consist of three (3) persons, one selected by the Company and one selected by the Union. The two persons selected shall agree upon a third person who shall act as Chairman of the Arbitration Board.
>
> Section 3. The decision or award of the Arbitration Board, or a majority thereof, shall be final and binding on both parties. If the third party to arbitration is not selected in ten (10) days from receipt of notice, the Director of the U.S. Conciliation Service shall be requested to make the appointment. The expense of the neutral arbitrator shall be borne equally by the parties.
>
> Section 4. Pending negotiations or during arbitration there shall be no strikes, lockouts, boycotts, or any stoppages of work.

**550**

ment Relations Act, 29 U.S.C. § 185, to compel arbitration of the severance pay issue or, in the alternative, for an award of the severance pay. The district court granted the company's motion for summary judgment on both counts, holding (1) that "the union's voluntary termination of its collective bargaining agreement with the company . . . destroyed any right to severance pay created by the collective bargaining agreement for displaced employees;" (2) that there was thus no severance pay issue to arbitrate; and (3) that even if there had been an arbitrable issue there was no duty to arbitrate, for it had died with the contract that created it.

█ We disagree. In our view, the district court approached the issues backwards when it first determined whether the company's obligation for severance pay survived the contract. This is a question more suitable for arbitration than judicial decision, as we explain below. Thus, the first question for the district court was whether the company's duty to arbitrate this particular issue survived the expiration of the contract. We believe it did, and accordingly we reverse and remand with instructions that the district court order the company to arbitrate.

### I.

The Union and the company apparently presented to the district court, as they have to us, contrasting views of the nature of severance pay. The Union argued that severance pay is an "earned" or "vested" right accruing to employees over a period of time, whose benefits cannot be denied them regardless when they come to fruition. The company, on the other hand, characterized severance pay as "a creation of the collective bargaining agreement," with the right to it contingent upon the occurrence of the triggering event—here the bakery closing—during the term of the contract.

The district court erred in choosing one characterization—the company's—over the other, for in fact severance pay has no immutable nature. It is indeed a creature of contract, but this means no more nor less than that it is in a given case exactly what the parties intended to make it when they bargained. In one case the parties may intend it to be available only if a triggering event occurs during the contract term. But as the Supreme Court has noted, there is "no reason why parties could not if they so chose agree to the accrual of rights during the term of an agreement and their realization after the agreement had expired." *John Wiley & Sons v. Livingston*, 376 U.S. 543, 555, 84 S.Ct. 909, 917, 11 L.Ed.2d 898 (1964). Thus the nature of the employees' right to severance pay in the circumstances here depends entirely upon the intent of the Union and the company when they wrote the relevant provision.

█ Any question of the intent behind a collective bargaining term must be referred to arbitration if it is available. This is in accord with the national labor policy expressed by Congress:

Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or *interpretation* of an existing collective-bargaining agreement.

LMRA § 203(d), 29 U.S.C. § 173(d) (emphasis added). This is also the clear teaching of the *Steelworkers Trilogy*,[3] and is based on the sound principle that an arbitrator, familiar as he is with both the parties and the industry, is better positioned than a court to divine their intent:

The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement

**3.** *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4

L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

although not expressed in it. The labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment.

*United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581–82, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960).

The arbitrator's absolute authority in such a matter, and a court's corresponding lack of power, was affirmed in another passage from the *Steelworkers Trilogy*:

> [T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

*United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960). The district court below pre-empted the arbitrator rather than overruling him. But he may do neither under the labor law.

## II.

The company argues most strenuously, however, that it cannot be ordered to arbitrate the severance pay issue because the collective bargaining agreement containing its duty to arbitrate had been terminated before the instant dispute arose. In support of its position the company cites several Supreme Court statements to the effect that a party cannot be required to arbitrate any issue unless it has agreed to do so.[4] We think the statements do not support the company's contention that a duty to arbitrate cannot survive the termination or expiration of a contract.

First, the Supreme Court has itself undercut the apparent premise that arbitration must rest upon contract by holding that in some circumstances a new employer who takes over a unionized business can be compelled to arbitrate under the arbitration clause of its predecessor's agreement, even though the new employer—a stranger to the bargaining—never agreed to such arbitration. *John Wiley & Sons, supra.* Although the potential implications of the *Wiley* case have since been narrowed, *see Howard Johnson Co. v. Hotel Employees*, 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974); *NLRB v. Burns Security Services, Inc.*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972), the Court has not retreated from its recognition that in some instances the national labor policy can impose an arbitration duty upon an unconsenting party:

> While the principles of law governing ordinary contracts would not bind to a contract an unconsenting successor to a contracting party, a collective bargaining agreement is not an ordinary contract. ". . . [I]t is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate. . . . The collective agreement covers the whole employment relationship. It calls into being a new common law—the common law of a particular industry or of a particular plant." . . . Central to the peculiar status and function of a collective bargaining agreement is the fact, dictated both by circumstance, . . . and by the requirements of the National Labor Relations Act, that

---

4. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.

   *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960).

   > Under our decisions, whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to

   be determined by the Court on the basis of the contract entered into by the parties.

   *Atkinson v. Sinclair Ref. Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962).

   > The law compels a party to submit his grievance to arbitration only if he has contracted to do so.

   *Gateway Coal Co. v. UMW*, 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583 (1974).

it is not in any real sense the simple product of a consensual relationship. *John Wiley & Sons, supra,* 376 U.S. at 550, 84 S.Ct. at 914 (citations omitted).

It is true that in *Wiley* there was a contract with an arbitration clause in existence when the union filed suit to compel arbitration,[5] whereas here there was none either when the dispute arose or when suit was filed. But we believe the Supreme Court has indicated that the principle of *Wiley* requires arbitration in the latter circumstance as well. In *Piano & Musical Instrument Workers v. W. W. Kimball Co.,* 221 F.Supp. 461 (N.D.Ill. 1963), the district court held that a union-employer dispute over rehiring of discharged employees, centering on the employees' seniority rights, was arbitrable even though the dispute arose several days after termination of the parties' collective bargaining agreement. The Seventh Circuit reversed, holding that arbitration could not be required in such circumstances. 333 F.2d 761, 765 (1964). The Supreme Court granted certiorari and summarily reversed the Seventh Circuit. 379 U.S. 357, 85 S.Ct. 441, 13 L.Ed.2d 541 (1964). Significantly, the Supreme Court cited only the first *Steelworkers Trilogy* case[6] and *Wiley.*

■ We believe *Wiley* and its use by the Supreme Court in *Piano Workers* support our view that a dispute that turns on whether parties intended certain accruable rights to be enjoyable, even after contract expiration, must be arbitrated if the contract provided for arbitration of such disputes, even if the contingency giving rise to the dispute itself transpired after expiration of the contract. *Accord, Steelworkers v. H. K. Porter Co.,* 64 L.R.R.M. 2201 (W.D.Pa. 1966); *cf. IAM v. Howe Sound Co.,* 350 F.2d 508 (3d Cir. 1965). *But see U.A.A. & A.I.W. v. Robertshaw Controls Co.,* 405 F.2d 29 (2d Cir. 1968) (en banc); *Ward Foods, Inc. v. Bakery & Confec-*

*tionery Workers,* 360 F.Supp. 1310 (S.D. N.Y.1973); *cf. Milk Drivers v. Thompson's Dairy, Inc.,* 80 L.R.R.M. 3403 (D.D. C.1972), *aff'd mem.,* 489 F.2d 1272 (D.C. Cir. 1974).

The company does not deny that the contract by its terms contemplated arbitration of any dispute over severance pay. Thus it is clear that the company literally agreed to arbitrate any issue of its obligation for severance pay. *See* note 4, *supra,* and accompanying text.

■ Judge Widener, concurring and dissenting, advances an argument that the employer rejects. The battle was not joined here or in the district court over whether the court or the arbitrator should decide that the question was arbitrable. What the fight is about, as stated in appellee's brief, is whether the duty to arbitrate can survive contract termination. We think the issue to which our brother Widener has addressed himself is not before us, but because of our respect for his viewpoint, we would add that we read the cases upon which he relies as being consistent with the general rule that the initial question of arbitrability is a matter to be determined by the court. An exception to the rule is where a clause in a labor contract purporting to exclude some matters from arbitration is vague and ambiguous. In such a case an arbitrator may be expressly empowered to not only adjudge grievances but also to decide whether the instrument gives him the power to do so. That is all that we held in *A. S. Abell Co. v. Baltimore Typographical Union No. 12,* 338 F.2d 190 (4th Cir. 1964). Indeed, Judge Sobeloff said in that case that if the meaning of the exclusionary section "were entirely clear it would become the duty of the court to declare the meaning." Again, in *Winston-Salem Printing Pressmen & Assistants' Union No. 318 v. Piedmont Publishing Co.,* 393 F.2d 221 (4th Cir.

---

**5.** The original employer and the union had entered into a contract with an arbitration clause that was to expire on January 31, 1962. The original employer merged with the new employer on October 2, 1961. The union filed suit against the new employer to compel arbitration one week before the expiration of its contract with the original employer. *See* 376 U.S. at 544–46, 84 S.Ct. 909.

**6.** *United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

1968), Judge Sobeloff writing for the court, acknowledged that "submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty." Only then did he conclude that the contract in that case specifically provided that the construction to be placed upon any clause, including the clause authorizing arbitration, was to be resolved through the grievance procedure and by the arbitrator himself. Judge Winter, sitting as a district judge, has written to the same effect. *Local 24, IBEW v. Wm. C. Bloom & Co.,* 242 F.Supp. 421, 428–29 (D.Md.1965). Indeed, the rule and its exception are now so well settled that both have found expression in one of the encyclopedias:

> Since the duty to arbitrate is of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty. The questions whether a party to a collective bargaining agreement must arbitrate, and what issues he must arbitrate, must be determined by the court on the basis of the contract entered into by the parties.
>
> However, the arbitrability of a dispute may itself be subject to arbitration if the parties have clearly so provided in the agreement. Of course, the court must decide the threshold question whether the parties have in fact conferred this power on the arbitrator. If they have, the court should stay proceedings pending the arbitrator's determination of his own jurisdiction, unless it is clear that the claim of arbitrability is wholly groundless.

48 Am.Jur.2d "Labor and Labor Relations" § 1257 at 783–84.

■ We simply hold that the company must abide by that agreement even after the contract embodying it has terminated. Not only the decisions in *Wiley* and *Piano Workers,* but also policy considerations indicate such a result. The company's obligation for severance pay depends upon the parties' intent behind the contract provision for severance pay. A court, after the *Steelworkers Trilogy,* is not the proper forum in which to inquire into that intent. If the expiration of the contract were held to strip the arbitrator of power, the best means of determining the true content of the parties' original agreement would not be available— which would increase the possibility of the parties' resorting to economic warfare in support of their respective interpretations. But this is precisely the kind of industrial unrest that collective bargaining, coupled with arbitration of difference over contract terms, is intended to avert. *See* LMRA § 101, 29 U.S.C. § 151. Our holding that arbitration is still available serves the most basic policy of our labor laws.

Our decision should not be read as disapproving those cases that hold arbitration unavailable for resolution of individual employee grievances, or disputes involving nonaccruable rights, that arise after expiration of a collective bargaining agreement. *See, e. g., OCAW v. American Maize Prods. Co.,* 492 F.2d 409 (7th Cir.), *cert. denied,* 417 U.S. 969, 94 S.Ct. 3173, 41 L.Ed.2d 1140 (1974); *Procter & Gamble Indep. Union v. Procter & Gamble Mfg. Co.,* 312 F.2d 181 (2d Cir. 1962), *cert. denied,* 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963); *Garlick Funeral Homes v. Service Employees,* 85 L.R.R.M. 2749 (E.D.N.Y.1974). We consider those cases different. To hold that a company had to arbitrate an employee discharge or a lockout that occurred after expiration of a contract providing for arbitration would mean that an employer who once agreed to submit its managerial actions to potential arbitration would in effect have agreed to do so for all time. That we do not hold. Our decision affects only those rights, like severance pay, that employees earn and that may or may not "vest" for future enjoyment—contingent upon a particular event.[7] The best way to determine

---

7. We believe one of the cases heavily relied upon by appellee is distinguishable from this case on the ground discussed in the text. In

*Milk Drivers v. Thompson's Dairy,* 80 L.R.R.M. 3403 (D.D.C.1972), *aff'd mem.,* 489 F.2d 1272 (D.C.Cir. 1974), the court refused to order ar-

whether the union and the employer meant for employees to enjoy those rights regardless of when the contingency occurs is to arbitrate. That is all we require.

*Reversed and remanded with instructions.*

ALDRICH, Senior Circuit Judge (concurring):

With great respect, I am not entirely sure of the full extent that my brethren are in disagreement, and perhaps I am being over-simplistic. However, it seems to me that what the parties are disputing—whether the claim for compensation vested while the contract was in force, and therefore survived its termination— is plainly a grievance within the meaning of the arbitrability clause, and neither we, nor the arbitrator, face the issue of arbitrability. The only issue, in other words, is whether the grievance is sound, which, of course, is for the arbitrator.

I see three possibilities open to court decision in this area: that there is an arbitrable issue of substance; that there is an arbitrable issue of whether the issue of substance is one subject to arbitration; or there is no arbitrable issue at all. If Judge Widener denies this first possibility, then I must disagree with him. At the same time, I think I see what troubles him. If the arbitrator, when appointed, rendered a decision to the effect that he saw no arbitrable issue, I don't know what a court could do about it. We do not face that question and I doubt if a court ever would. However, I do not see how, in theory, a court that can, in the proper circumstances, rule that there is no question to be arbitrated, cannot equally rule that there is one. Indeed, that is what it does every time it instructs the arbitrator that there

bitration over severance pay when a company went out of business after the expiration of the collective bargaining agreement. But the contract there did not on its face grant employees an absolute right to severance pay, as does the contract in the instant case. Instead, the contractual duty of the employer was to "negotiate the terms of discontinuance regarding severance pay." Under that contract there was no room for an argument that the parties

is an arbitrable issue whether the arbitration clause covers the substantive matter sought to be arbitrated.

WIDENER, Circuit Judge (concurring and dissenting):

While I agree that this case calls for referral to arbitration, I do not agree that *Piano & Musical Instrument Workers v. W. W. Kimball,* 379 U.S. 357, 85 S.Ct. 441, 13 L.Ed.2d 541 (1964), forecloses an objection to arbitration being lodged before the arbitrator. I, therefore, respectfully dissent from that portion of the majority's opinion.

In *Piano Workers,* the defendant Kimball had entered into a collective bargaining agreement with Piano & Musical Workers Local 2549. The contract period ran from October 1, 1960 to October 1, 1961. In August 1961, the defendant decided to discontinue operations at its Melrose Park Plant in Illinois and began the process of discharging all employees at that location. On October 9 of that year, eight days after the expiration of the collective bargaining agreement, Kimball opened a new plant at French Lick, Indiana.

Despite the fact the union contract had been terminated, the union claimed its members had a right to priority in employment at the new plant. It based its claim on Article II, Section 2, Paragraph 6 of the contract, which stated:

"When reemployment occurs employees will be called back to work in order of their seniority."

When the company refused to follow the rehiring procedure desired by the union or submit the dispute to arbitration, the union brought suit in the United States District Court for the Northern District of Illinois.

*at the time of original bargaining* had intended employees to receive severance pay upon a post-termination shutdown. The contract contemplated only that the parties would discuss the *possibility* of severance pay *at the time of shutdown.* Nothing could accrue, and the obligation to negotiate simply died with the contract. An agreement to negotiate does not last forever.

The district court in that action determined that the question of whether the issues raised by the complaint were arbitrable following termination of the contract was a subject for arbitration. As the court pointed out, it was "the arbitrator's construction of that [arbitration] clause and not the Court's that was bargained for." 221 F.Supp. 463. The court did not, therefore, in that holding, go so far as to hold that the union-employer dispute over rehiring was, in fact, arbitrable.

On appeal, the Seventh Circuit held that the lower court's determination that the question of arbitrability was for the arbitrator was in error. But it went on to conclude that arbitration could not be ordered under the circumstances since the record failed to show that Kimball, during the term of the agreement, had in any way violated the contract rights of any of its employees. 333 F.2d 761.

The Supreme Court subsequently granted certiorari and summarily reversed the Seventh Circuit. The question presented to the Supreme Court, however, did not include the issue of whether the court or the arbitrator was to determine the threshold question of arbitrability under these circumstances. Rather, the issue before the Court in that case was the propriety of the Circuit Court's dismissal of the appellant's claim based upon the merits of the dispute.[1]

I am of the opinion, therefore, that *Piano Workers* does not require that the substantive dispute in the present case be deemed arbitrable. Nor do I believe

that the conclusion is mandated by the Supreme Court's opinions in *United Steelworkers v. American Mfg. Co.* or *John Wiley & Sons v. Livingston.*[2] The question before us is a very narrow one: Is the arbitration clause susceptible of an interpretation that necessarily covers the asserted dispute? While doubts should be resolved in favor of coverage, *United Steelworkers v. Warrior & Gulf Co.,* 363 U.S. 564, 582–83, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *A. S. Abell Co. v. Baltimore Typographical Union No. 12,* 338 F.2d 190, 193 (4th Cir. 1964), the court should ever be mindful of Mr. Justice Douglas' admonishment in *United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960):

> "The courts . . . have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403.

Thus, where the determination of the arbitrability of a dispute would necessarily require consideration of the merits of the underlying disagreement, both issues should be submitted to the arbitrator. *A. S. Abell Co. v. Baltimore Typographical Union No. 12,* 338 F.2d 190 (4th Cir. 1964).

Our decision in *Winston-Salem Printing Pressmen & Assistants' Union No. 318 v. Piedmont Publishing Co.,* 393 F.2d 221 (4th Cir. 1968),[3] is precisely in point

1. The second opinion of the district court which establishes what the Supreme Court decided in its own case was not considered by the majority here. It is reported in 239 F.Supp. 523 (1965).

2. The *Steelworkers Trilogy* and *John Wiley and Sons* were specifically discussed and construed in our opinion in *Winston-Salem Printing Pressmen & Assistants' Union No. 318 v. Piedmont Publishing Co.,* 393 F.2d 221 (4th Cir. 1968), which case is later discussed.

3. An examination of the contract in that case shows that the phrase construed was "any dispute" over wages, hours, working conditions, and shop practices. 393 F.2d 221, n. 1. I submit the difference between "any dispute"

in *Winston-Salem Printing Pressmen,* and "any grievance" in question here, is more theoretical than real. It is true that in the *Winston-Salem Printing Pressmen* case the contract provided for arbitration of "the construction to be placed upon any clause of . . . [the] agreement," but that is what a grievance is, a dispute between employee and employer over the meaning of the collective bargaining agreement. A case directly in point and consistent with my viewpoint is *U. A. W. et al v. Cardwell Mfg. Co.,* 304 F.2d 801 (10th Cir. 1962), where the matter to be submitted to arbitration was a "grievance" which was defined in the contract as "any dispute between the Company and the Union." Here, the fact that

here on facts which are indistinguishable for all practical purposes. The majority, however, fails to follow that case. There, we scrupulously avoided any expression as to how the question of arbitrability should be resolved where the application of the arbitration clause itself was subject to dispute. In that case, an employer sought to avoid arbitration on the grounds that the duty to arbitrate ceased with the expiration of the contract when the request to arbitrate came subsequent thereto. The district court concluded that the contract in question did not state that notice to arbitrate had to be given prior to expiration of the agreement, but that should settlement of contract disputes prove impossible, the differences would be arbitrated. On appeal, we held that where the issue of arbitrability involved interpretation of the contract, the entire matter, including the question of arbitrability should be submitted to the arbitrator.

This conclusion is consistent with our earlier holding in *A. S. Abell Co. v. Baltimore Typographical Union No. 12*, 338 F.2d 190 (4th Cir. 1964), where we stated that where it is not "clear beyond rational debate" that the litigants intended the dispute to be submitted to arbitration, the entire matter, including the question of arbitrability, should be referred to the arbitrator. To conclude otherwise would be to foreclose any opportunity to estab-

lish, by way of bargaining history, the intent of the parties to exclude certain matters from arbitration, for it is firmly established in this circuit that bargaining history is of no legitimate use in determining whether to order the submission of a grievance to arbitration. Id. at 194. See also *Local No. 1434 IBEW v. E. I. duPont deNemours & Co.*, 350 F.Supp. 462, 466–67 (E.D.Va.1972).

In the instant case, it is by no means "clear beyond rational debate" that the dispute over severance pay after contract termination constitutes a "grievance" within the meaning of the contract. The contract itself merely provides:

> "In the event any grievance cannot be satisfactorily adjusted . . . either of the parties hereto may demand arbitration. . . . "

Nowhere within the agreement have the parties attempted to define "any grievance." Since the phrase "any grievance" is left undefined, whether the parties intended that disputes arising after the termination of the contract be subject to arbitration may well call for a detailed examination of the bargaining history leading up to the contract, a task uniquely suited to the arbitrator. I am of opinion either party should be allowed to offer bargaining history to explain the undefined phrase, which, being unde-

---

"any grievance" is undefined by contract is all the more reason to submit to arbitration the applicability of the phrase to the dispute at hand.

It is generally held that the term "grievance" is not a term of art, and has no connotation different from its meaning in ordinary use. *Forrest Industries, Inc. v. Local No. 3–436 Int. Woodworkers*, 266 F.Supp. 265 (D.Or.1966), aff'd 381 F.2d 144 (9th Cir. 1967); *Butte Miners' Union No. 1, etc. v. Anaconda Co.*, 159 F.Supp. 431, 435 (D.Mont.1958); *Petition of Labor Mediation Board*, 365 Mich. 645, 114 N.W.2d 183, 187 (1962); *Timken Roller Bearing Co. v. NLRB*, 161 F.2d 949, 955 (6th Cir. 1947). And the teaching of the Supreme Court in its decision in *Warrior & Gulf* is to the effect that a liberal and broad construction should be given the term in the interest of encouraging the use of machinery which the parties themselves have set up for the peaceful settlement of disputes. *Forrest Industries, Inc.*

*v. Local No. 3–436, Int. Woodworkers*, 381 F.2d 144, 146 (9th Cir. 1967).

*Warrior & Gulf* states the rule we should follow now, as we have in the past:

"Since any attempt by a court to infer such a purpose necessarily comprehends the merits, the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator."

\* \* \* \* \* \*

"The judiciary sits in these cases to bring into operation an arbitral process which substitutes a regime of peaceful settlement for the older regime of industrial conflict. Whether contracting out in the present case violated the agreement is the question. It is a question for the arbiter, not for the courts." 363 U.S. at 585, 80 S.Ct. at 1354.

fined, and subject to bargaining history, is not "clear beyond rational debate."

The majority, without the benefit of any evidence as to the parties' intent, has chosen to foreclose further inquiry into the question of arbitrability. In essence, it holds that the courts must conclusively decide the question of arbitrability, even where it is not "clear beyond rational debate" what the intent of the parties might have been. In so doing, the majority opinion extends an open invitation, indeed a command, to the courts to entangle themselves in the construction of both procedural and substantive provisions of labor agreements. This I consider to be improvident, clearly contrary to the law which has prevailed in this circuit, and not in keeping with the rule as stated in *Warrior and Gulf,* 363 U.S. at p. 585, 80 S.Ct. 1347.

Moreover, whether the parties in the instant case intended for the dispute over severance pay to be subject to arbitration after the termination of the contract seems to me to be inextricably intertwined with the substantive problem of whether or not it was the intent of the parties that severance pay provided for in the contract survive its termination. Certainly, no dispute can arise under the terms of the expired contract unless some substantive right survives its expiration.

Even assuming that there be doubt that the dispute is arbitrable, given the standard to be applied, it is clear that this matter must be submitted to arbitration at least for threshold consideration. To go further, however, and hold that the controversy is so clearly arbitrable under the contract as to foreclose the introduction of any evidence before the arbitrator as to the intent of the parties is, in my opinion, to substitute the views of this court for that of the arbitrator as to the merits of the dispute. This would create a "curious rule which required that intertwined issues . . . growing out of a single dispute and raising

the same question on the same facts had to be carved up between two different forums, one deciding after the other. Neither logic nor considerations of policy compel such a result." [4]

I would accordingly remand with instructions that:

(1) The whole dispute should be referred to arbitration.

(2) At the arbitration, the company may make the objection that the dispute over severance pay under the facts presented was not intended by the parties to be subject to arbitration.

(3) If the arbitrator should decide the dispute is subject to arbitration, then he should go on and decide, under the facts presented, the substantive question of whether or not "the parties intended . . . [severance pay] rights to be enjoyable, even after contract expiration." Opinion, p. 552.

Since the Supreme Court in *Piano Workers* did not decide the question of whether the question of arbitrability of the dispute was subject to arbitration, the majority here has obviously chosen to follow the Seventh Circuit in *Piano Workers* rather than our own cases. Not only do I prefer the logic of *Cardwell Mfg. Co.* and our cases of *A. S. Abell Co.* and *Winston-Salem Printing Pressmen,* for they give a more liberal reading to arbitration provisions, which I think consistent with national labor policy, I submit we are bound by our own decisions absent an en banc court.

"Whether contracting out [arbitration] in the present case violated the agreement is the question. It is a question for the arbiter, not the courts." 363 U.S. at 585, 80 S.Ct. at 1354. This final conclusion of the Supreme Court in *Warrior and Gulf* is equally applicable here and no more than a following of the statute, 29 U.S.C. § 173(d), as it declares that settlement of labor disputes by arbitration is the "desirable method" for set-

---

4. *John Wiley & Sons v. Livingston,* 376 U.S. 543, 547, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). While the Court was dealing with a question of procedural arbitrability, the logic employed there appears equally applicable to the facts of

this case for the majority here has taken "intertwined issues . . . growing out of a single dispute" and carved them up between two different forums.

tling "grievance disputes" arising not only from the "interpretation" of collective bargaining agreements, but also their "application." Typical of the majority opinion is its placing of italics on *interpretation* in its quotation of the statute, opinion p. 550, while not acknowledging anywhere in the opinion the equal emphasis Congress placed on *application.* That is its fundamental error.

Thus, the majority has fallen into the same trap for which it chides the district court at p. 551 of the opinion. It "preempted the arbitrator rather than overruling him." It "may do neither under the labor law." This court has no more authority to pre-empt the arbitrator than has the district court.