# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

GREENSTAR IH REP, LLC and   :
GARY SEGAL,        :
            :
    Plaintiffs,     :
            :
    v.       :  **C.A. No. 12885-VCS**
            :
TUTOR PERINI CORPORATION,  :
            :
    Defendant.    :

## MEMORANDUM OPINION

Date Submitted:  January 20, 2017
Date Decided:  February 23, 2017

Kenneth J. Nachbar, Esquire and Lauren K. Neal, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware, and Ira Lee Sorkin, Esquire and Amit Sondhi, Esquire of Mintz & Gold LLP, New York, New York, Attorneys for Plaintiffs.

Brian C. Ralston, Esquire, Aaron R. Sims, Esquire and Kwesi Atta-Krah, Esquire of Potter Anderson & Corroon LLP, Wilmington, Delaware, and Nomi L. Castle, Esquire and Matthew J. Luce, Esquire of Castle & Associates, PLC, Beverly Hills, California, Attorneys for Defendant.

**SLIGHTS, Vice Chancellor**

The Court is asked to decide the "rather arcane" question of who, as between this Court or an arbitrator selected by the parties, should decide whether certain disputes are arbitrable.[1] The analysis of the question is complicated in this case because the parties' relationship, as relevant here, is governed by two contracts that contain different choice of law, choice of forum and, importantly, dispute resolution provisions. Specifically, one contract, an employment agreement, contains a mandatory arbitration clause; the other contract, a merger agreement, provides that all disputes arising under that agreement shall be adjudicated by a Delaware court. The Plaintiffs have raised the issue of arbitrability by a motion for partial judgment on the pleadings in which they seek a declaration that claims the Defendant has asserted in a California arbitration proceeding arise under the merger agreement and must, therefore, be litigated in a Delaware court.

The issue of substantive arbitrability in essence raises a question of subject matter jurisdiction. Delaware courts are no strangers to the issue and the law of substantive arbitrability can now safely be characterized as settled. Having applied that law to the contractual arbitration clause at issue here, I am satisfied that the motion for judgment on the pleadings must be granted in part and denied in part. The Plaintiffs have demonstrated as a matter of undisputed fact and as a matter of

---

[1] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995) ("the 'who (primarily) should decide arbitrability' question-is rather arcane").

1

law that a declaration of non-arbitrability is appropriate with respect to the so-called "Earn-Out Claim" that has been brought in the California arbitration. Both parties now appear to concede that this claim arises out of the merger agreement and should, therefore, be pursued in a Delaware court. The Plaintiffs have failed to demonstrate, however, as a matter of undisputed fact or as a matter of law that a declaration of non-arbitrability is appropriate as to the so-called "Indemnification Claims" or the "Consequential Damages Claim," both of which have been brought in the California arbitration. The question of arbitrability with respect to those claims must be addressed to the California arbitrator.

## I. FACTUAL BACKGROUND

I draw the facts from the Verified Complaint (the "Complaint") and the documents it incorporates by reference. I assume for now that the well-pled facts are true.

### A. The Parties and Relevant Non-Parties

Plaintiff Greenstar IH Rep LLC ("IH Rep") is a Delaware Limited Liability Company that represents the interests and rights of the "Interest Holders" (as "Interest Holder Representative") under an Agreement and Plan of Merger By and Among Tutor Perini Corporation, Galaxy Merger, Inc., GreenStar Services Corporation and Greenstar IH Rep, LLC (the "Merger Agreement"). Plaintiff Gary Segal, a resident of New York, is the former CEO of Five Star Electric Corporation

2

("Five Star") and the former Chairman and CEO of GreenStar Services Corporation ("GreenStar"). Segal is an Interest Holder under the Merger Agreement.

Defendant Tutor Perini Corporation "is an international civil and building construction company which offers diversified general contracting, construction management and design-build services to private customers and public agencies throughout the world."[2] It is a Massachusetts corporation with its principal place of business in Sylmar, California. Its common stock trades on the New York Stock Exchange under the symbol "TPC."

Non-party GreenStar was acquired by Tutor Perini pursuant to the Merger Agreement. GreenStar consisted of three affiliated companies: Five Star, WDF, Inc. and Nagelbush Mechanical, Inc. At the time of the acquisition, non-party Five Star, a wholly owned subsidiary of Tutor Perini, was the largest electrical contractor in the greater New York City area with more than 1,500 employees. It provided electrical light, power and low-voltage systems to a range of public and private sector customers.

**B. The Merger Agreement and the Employment Agreement**

The disputes between the parties follow a 2011 merger in which, as noted, Tutor Perini acquired GreenStar. IH Rep served as the Interest Holder

---

[2] Verified Complaint ("Compl.") ¶ 2.

Representative for the former stockholders of GreenStar, *inter alia*, to assert their rights under the Merger Agreement post-closing. The Merger Agreement contains a Delaware choice of law provision and a forum selection provision designating any state or federal court in Delaware as the exclusive forum. Through its acquisition of GreenStar, Tutor Perini acquired GreenStar's three affiliated companies including Five Star.

At the time of the merger, Tutor Perini, Five Star and Segal executed an Employment Agreement whereby Segal agreed to serve as President and CEO of Five Star for an initial period of five years. The Employment Agreement contains a New York choice of law provision and a mandatory arbitration provision. The arbitration provision expressly states that the arbitration shall be conducted before JAMS, in accordance with the rules and regulations promulgated by JAMS, and shall be held in Los Angeles, California. The Employment Agreement also contains an exclusive California forum selection clause that provides: "[t]he parties consent to exclusive personal jurisdiction of the state and federal courts situated in the State of California in respect to enforcement of this Agreement and waive any defenses based on personal jurisdiction or venue in such courts."

### C. Procedural History

On September 29, 2016, Tutor Perini and Five Star initiated a JAMS arbitration in Los Angeles against Segal alleging claims for breach of the

4

Employment Agreement, breach of the implied covenant of good faith and fair dealing, fraud, conversion, and breach of fiduciary duty arising out of Segal's alleged misconduct as an employee of Five Star. In total, there are eight claims for relief in the Demand for Arbitration (the "Demand"). The specific allegations—which have been grouped together and restyled by the Plaintiffs into three defined types of claims, the "Earn Out Claim," the "Indemnification Claims," and the "Consequential Damages Claim"—appear in Tutor Perini's and Five Star's first, fourth, fifth and eighth claims for relief. In the Demand, these claims are styled Breach of Employment Agreement, Fraud and Concealment, Constructive Fraud and Declaratory Judgment, respectively. According to Tutor Perini and Five Star, all claims asserted in the California arbitration arise out of damage caused by Segal's conduct while acting as CEO of Five Star, including excessive personal expenditures and improper contracting practices that prompted an investigation by the United States Attorney's Office, all of which allegedly resulted in the loss of significant business opportunities and profits.

On November 7, 2016, Segal and IH Rep filed their Complaint in this Court alleging breaches of the Merger Agreement and seeking declaratory judgments that certain claims advanced by Tutor Perini in its Demand relate to representations and warranties, indemnification commitments and related damages caps within the Merger Agreement and are subject to that agreement's exclusive Delaware forum

5

selection clause. Plaintiffs filed a motion for a preliminary injunction along with their Complaint to prevent Tutor Perini from prosecuting claims arising under the Merger Agreement in the arbitration. That motion was rendered moot when the parties agreed to stay the arbitration proceedings pending resolution of the declaratory judgment claims by way of this motion for judgment on the pleadings.

## II. LEGAL ANALYSIS

Plaintiffs' motion for judgment on the pleadings frames an issue that calls the gating question of whether this Court can or should exercise subject matter jurisdiction over certain claims raised in the California arbitration. There is no need for a fully developed factual record to decide the issue. It can be decided as a matter of law based on the matters pled in the Complaint and the documents attached thereto.

### A. Legal Standard

Under Court of Chancery Rule 12(c), the Court may grant a motion for judgment on the pleadings if, when viewing the claims in the light most favorable to the nonmoving party, there are no material issues of fact and the movant is entitled to judgment as a matter of law.[3] When seeking Rule 12(c) relief in connection with a contract dispute, the moving party must show that the "contract's meaning is

---

[3] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993).

6

unambiguous and the underlying facts necessary to its application are not in dispute."[4]

## B. The California Forum Selection Clause

At the outset, I note that Tutor Perini has urged me to decline to address the substantive arbitrability question in deference to the California forum selection clause in the Employment Agreement. In this regard, it is important to appreciate the distinction between Tutor Perini's argument that this Court lacks subject matter jurisdiction based on the Employment Agreement's forum selection clause and its separate argument that this Court lacks subject matter jurisdiction because the parties have agreed to arbitrate all disputes including the issue of arbitrability. As to the latter argument, Tutor Perini asserts, as a matter of law, that this Court lacks subject matter jurisdiction over issues which these parties have agreed to arbitrate and that the arbitration provision in the Employment Agreement makes clear that the parties agreed to arbitrate even the issue of substantive arbitrability.[5] Tutor Perini's separate argument that this Court lacks subject matter jurisdiction under the Employment

---

[4] *Fiat N. Am. LLC v UAQ Retiree Med. Benefits Trust*, 2013 WL 3963684, at *7 (Del. Ch. July 30, 2013).

[5] Tutor Perini has not moved to dismiss Counts VI–VIII of Plaintiffs' Complaint in this Court under Rule 12(b)(1), as it could have, but instead raises this jurisdictional argument as a response to Plaintiffs' motion for judgment on the pleadings.

Agreement's forum selection clause is one-step further removed from that analysis. Unlike the typical case where the relevant question is "who has the authority to decide substantive arbitrability," Tutor Perini asks the Court first to consider "who has the authority to decide who has the authority to decide substantive arbitrability?" While this matryoshka-like question might, in some instances, be complex, the language of the Employment Agreement provides a rather straightforward answer here.

Tutor Perini is correct that Section 16 of the Employment Agreement does contain an exclusive California choice of forum clause. It ignores, however, the exception to that clause within Section 8 that allows the parties to bypass arbitration and to seek relief "in court" when seeking "temporary or preliminary injunctive relief . . . for the limited purpose of avoiding immediate and irreparable harm." This clause also provides that "[t]he provisions of this Section 8 shall be enforceable in any court of competent jurisdiction." When read in its entirety, the plain meaning of Section 8 reveals that a party seeking to avoid irreparable harm through injunctive relief may proceed in any court of competent jurisdiction without first submitting the matter to arbitration.

That is precisely what Plaintiffs have done in this case. Segal requested that this Court enjoin Tutor Perini from prosecuting certain claims in the California arbitration by declaring that they are non-arbitrable. "This Court has clearly held

that a party faced with immediate arbitration of non-arbitrable issues is threatened with irreparable harm sufficient to warrant an injunction."[6]  Therefore, the Employment Agreement, by its terms, allows Plaintiffs to address their claims for declaratory and injunctive relief to this Court notwithstanding the California forum selection clause.  I turn next to the question of whether this Court or the California arbitrator should decide substantive arbitrability.[7]

## C. The Parties Agreed to Arbitrate Arbitrability

As noted, the Employment Agreement is governed by New York law and the Merger Agreement is governed by Delaware law.  The parties have acknowledged this fact but have relied principally upon Delaware law in their submissions and at oral argument.  As there does not appear to be a conflict of law, I agree that it is

---

[6] *HDS Inv. Hldg. Inc. v. Home Depot, Inc.*, 2008 WL 4606262, at *9 (Del. Ch. Oct. 17, 2008).

[7] Tutor Perini made a separate argument, raised for the first time at oral argument, that the Court should deny the motion because Plaintiffs did not name Five Star as a party in this action. I note that Tutor Perini has not brought a motion to dismiss under Ct. Ch. R. 12 for failure to join a necessary party under Rule 19.  In any event, the indispensable party issue, to the extent it is an issue, is moot because my rulings on this motion do not affect or otherwise prejudice Five Star's rights. The Court has granted the motion for judgment on the pleadings as to Count VI of the Complaint in large part based on the concession of Tutor Perini's counsel that the Earn-Out Claim is not and should not be part of the California arbitration.  As to the other two counts of the Complaint at issue in this motion, the Court has determined that all parties concerned should direct their arguments regarding substantive arbitrability to the arbitrator.

appropriate to rely upon Delaware law to resolve the question of who decides substantive arbitrability.[8]

As a matter of public policy, Delaware favors the resolution of disputes by arbitration.[9] Even so, "the question of whether the parties agreed to arbitrate is generally one for the courts to decide and not for the arbitrators."[10] As the United State Supreme Court has explained, this is because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[11] Therefore, courts should not presume that parties agreed to arbitrate the issue of arbitrability unless there is "clear and unmistakable evidence that they did so."[12]

In *Willie Gary*, our Supreme Court articulated a two-part test for determining whether clear and unmistakable evidence reveals that the parties agreed to submit the issue of arbitrability to the arbitrator: (1) the arbitration provision must generally provide for arbitration of all disputes; and (2) the provision must incorporate a set of

---

[8] *Deuley v. DynCorp Int'l, Inc.*, 8 A.3d 1156, 1161 (Del. 2010) (quoting *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006)) ("According to conflicts of law principles . . . [when] there is a 'false conflict' . . . the Court should avoid the choice-of-law analysis altogether.").

[9] *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 79 (Del. 2006).

[10] *Id.*

[11] *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).

[12] *Willie Gary*, 906 A.2d at 79.

arbitration rules that empowers the arbitrator to decide arbitrability.[13]  This formulation, while simple in design, appeared to leave open for debate the question of "when does an arbitration clause 'generally provide for arbitration of all disputes?'"

The Court confronted this question in *McLaughlin v. McCann*.[14]  There, the court noted that the trial court opinion in *Willie Gary*[15] acknowledged, but did not fully endorse, the majority federal view that "contracts providing for arbitration in accordance with the AAA Rules have, by that simple reference, evinced an intent that an arbitrator rather than a judge, [should] determine whether claims must be arbitrated."[16]  The trial court in *Willie Gary* then suggested that, notwithstanding its own reservations, the Delaware Supreme Court "might, for good reason, wish to follow the weight of federal authority by holding as a matter of law that a contractual clause calling for arbitration of a class of disputes under the AAA Rules evinces a clear and unmistakable intent to arbitrate arbitrability questions."[17]  This holding, it

---

[13] *Id.* at 80.

[14] 942 A.2d 616, 625 (Del. Ch. 2008).

[15] *Willie Gary, LLC v. James & Jackson, LLC*, 2006 WL 75309 (Del. Ch. Jan. 10, 2006).

[16] *Id.*  at *6.

[17] *Id.* at *8.

was suggested, would "turn such a reference into a term of art" and would "arguably be economically efficient as a general policy rule."[18]

While recognizing the importance of the federal courts' efficiency rationale, our Supreme Court in *Willie Gary* stopped short of holding that an arbitration clause that referenced a set of arbitration rules permitting the arbitrator to resolve disputes about arbitrability alone would constitute clear and unmistakable evidence of the parties' intent to allow the arbitrator to decide substantive arbitrability. Instead, the Supreme Court adopted the now-settled *Willie Gary* two-part test. The first element of this test—that "the arbitration provision must generally provide for arbitration of all disputes"—prompted the court in *McLaughlin* to observe that the test might be applied in a manner that would undermine "the efficiency rationale" endorsed by our Supreme Court.[19]

In reconciling what might be construed as a mixed message in *Willie Gary*, *McLaughlin* noted that the "general tenor" of the two-part test "indicates that the Delaware Supreme Court believes a reference to the AAA Rules has a critically important role in determining whether the parties intended to arbitrate arbitrability."[20] The court went on to hold that the "takeaway" from the "generally

---

[18] *Id.*

[19] *McLaughlin*, 942 A.2d at 623.

[20] *Id.* at 625.

12

provides for arbitration of all disputes" requirement is that "the carve-outs and exceptions to committing disputes to arbitration should not be so obviously broad and substantial as to overcome a heavy presumption that the parties agreed by reference . . . to [arbitration panel] Rules . . . that the arbitrator, and not a court, would resolve disputes about substantive arbitrability."[21]  The court concluded: "in a case where there is any rational basis for doubt about . . . the court should defer to arbitration, leaving the arbitrator to determine what is or is not before her."[22]

Here, both prongs of the *Willie Gary* test are easily satisfied, particularly when viewed through the *McLaughlin* lens.  The arbitration provision at issue states, in part:

> Except with respect to injunctive relief, which may be sought in a court of competent jurisdiction, all disputes, claims, or controversies arising out of or relating to this Agreement or the breach thereof or otherwise arising out of Segal's employment or the termination of that employment. . . shall, to the fullest extent permitted by law, be resolved solely and exclusively by binding arbitration to be conducted before J.A.M.S./Endispute, Inc. or its successor.  The arbitration shall be held in Los Angeles, California, before a single arbitrator and shall be conducted in accordance with the rules and regulations promulgated by J.A.M.S./Endispute, Inc . . .

---

[21] *Id.*  This approach is consistent with other decisions from this court holding that an arbitration clause can be broad enough to meet the *Willie Gary* test while still providing "limited ancillary relief to protect [the parties'] interests during the pendency of the arbitration process."  *BAYPO Ltd. Partnership v. Tech. JV, LP*, 940 A.2d 20, 27 (Del. Ch. 2007).

[22] *McLaughlin*, 942 A.2d at 625.

The clause is broad and unquestionably "provides for arbitration of all disputes" arising from the Employment Agreement. The references to seeking injunctive relief in a court of competent jurisdiction as an exception to arbitration is not "so obviously broad and substantial" as to justify a finding that the parties intended to diminish the breadth of their commitment to arbitrate all disputes arising out of Segal's employment or relating to the employment agreement.[23] The provision also expressly incorporates a set of arbitration rules—"the rules and regulations promulgated by J.A.M.S./Endispute, Inc." Rule 11(b) of the J.A.M.S. Rules expressly authorizes the arbitrator to decide arbitrability.[24] When read in total, the parties' negotiated arbitration clause reflects their unmistakable intent to empower the arbitrator to decide issues of substantive arbitrability.

## D. The *McLaughlin* "Non-Frivolous" Inquiry

Plaintiffs maintain that even if the Court concludes that the arbitration clause in the Employment Agreement satisfies the *Willie Gary* test, the Court should still conclude that any argument that the "Earn-Out Claim,"[25] "Indemnification

---

[23] *BAYPO*, 940 A.2d at 27.

[24] Def.'s Answering Br. in Opp'n to Pls.' Mot for J. on the Pleadings ("Def.'s Answering Br."), Ex. C at 14.

[25] Compl. Ex. D, Demand for Arbitration ("Demand") ¶ 110(b). *See* Pls.' Opening Br. 10–12 (defining the claims in the Demand that Plaintiffs believe are captured within the dispute resolution provisions of the Merger Agreement).

Claims"[26] and "Consequential Damages Claim,"[27] as alleged in the California arbitration, are arbitrable must be deemed "frivolous." This is significant because in *McLaughlin*, again relying upon federal arbitration jurisprudence,[28] the court determined that, in addition to applying the *Willie Gary* test, when addressing a substantive arbitrability challenge, the trial court should consider whether an argument that a claim is subject to arbitration is "frivolous" on its face. Stated differently, having passed the *Willie Gary* test, the matter of arbitrability should be submitted to the arbitrator if the party challenging arbitrability cannot make a "clear showing that the party desiring arbitration has essentially no non-frivolous argument about substantive arbitrability to make before the arbitrator."[29]

*McLaughlin's* non-frivolous inquiry further promotes the efficiency gains advanced by the court in *Willie Gary*. Although the public policy of this State favors

---

[26] Demand ¶¶ 73(a)–(g), 74(j), 87–92, 109.

[27] Demand ¶¶ 74(k), 98.

[28] *Local 358, Bakery & Confectionery Workers v. Nolde Bros.*, 530 F.2d 548, 553 (4th Cir. 1975) ("[T]he arbitrability of a dispute may itself be subject to arbitration if the parties have clearly so provided in the agreement. Of course, the court must decide the threshold question whether the parties have in fact conferred this power on the arbitrator. If they have, the court should stay proceedings pending the arbitrator's determination of his own jurisdiction, unless it is clear that the claim of arbitrability is wholly groundless."), *aff'd*, 430 U.S. 243 (1977).

[29] *McLaughlin*, 942 A.2d at 626–27. The court noted that this additional element did not create an exception to *Willie Gary*, nor did it represent a radical extension of Delaware law. *Id.*

arbitration of disputes, it also places a premium on freedom of contract. Once a court determines that the parties have evinced a clear and unmistakable intent to send all issues to the arbitrator, which in our State is determined by analyzing the two prongs of *Willie Gary*, the court is to err on the side of arbitration in order to abide by the parties' agreement. As a final measure to protect the first-order concern that parties not be required to arbitrate issues they did not agree to arbitrate, the court undertakes the limited inquiry of determining whether the party resisting arbitration has made a clear showing that the party seeking arbitration has no-non frivolous argument to make to the arbitrator regarding arbitrability. This approach protects the efficiency gains discussed in *Willie Gary* and *McLaughlin* without sacrificing the parties' contractual freedom.[30] It does so by allowing them to agree "generally [to] provide for arbitration of all disputes," including disputes over substantive arbitrability, while remaining secure in the knowledge that the court will not send claims to an arbitrator when it is clear that the assertion of substantive arbitrability is frivolous.

For its part, Tutor Perini disagrees that the claims in the Demand are not subject to arbitration, subject to its concession of non-arbitrability with respect to the Earn-Out Claim. It argues that all of the misconduct identified in the Demand

---

[30] *Li v. Standard Fiber, LLC*, 2013 WL 1286202, at *5 (Del. Ch. Mar. 28, 2013).

16

arose from Segal's position as an employee of Five Star and is therefore subject to the Employment Agreement.

Having determined under *Willie Gary* that the arbitration clause in the Employment Agreement evinces a clear intent to arbitrate the issue of substantive arbitrability, the Court's next task is to subject the claims in the Demand to the *McLaughlin* non-frivolous inquiry. This required a claim-by-claim analysis.[31]

### E. Tutor Perini Has Presented Non-Frivolous Arbitrability Arguments

In the Demand, Five Star and Tutor Perini have advanced claims against Segal which they allege arise out of his misconduct while acting as CEO of Five Star. The Plaintiffs here have styled these claims as the "Earn-Out Claim," the "Indemnification Claims" and the "Consequential Damages Claim." I start where there appears to be little, if any, disagreement. It is clear on the face of the Merger Agreement and the Demand that any claim Segal may have to earn-out payments arises solely from his status as an Interest Holder under the Merger Agreement. As noted, any dispute over whether earn-out payments are due under the Merger Agreement must be litigated in a Delaware court. In the Demand, Five Star and Tutor Perini ask for a declaratory judgment that Segal "is not entitled to receive any

---

[31] *Id.*

17

further earn-out payments under the Employment Agreement."[32] But Segal was never entitled to any earn-out payments under his Employment Agreement. The merits of Segal's right to earn-out payments under the Merger Agreement are wholly disconnected from his conduct as an employee of Five Star.

Tutor Perini has acknowledged as much in its filings in this Court and at oral argument. In its Answering Brief, Tutor Perini represented that "the allegation in the Arbitration Demand regarding earn-out payments [was] included to preempt any attempt by Segal to end run the dispute resolution procedures in the Merger Agreement by asserting a counterclaim in the Arbitration seeking to compel earn-out payments to himself."[33] Taking this statement at face value, it appears that Tutor Perini prophylactically asserted a claim in the arbitration proceeding that it admits arises solely from the Merger Agreement so that Plaintiffs could not seek to arbitrate that issue. Counsel for Tutor Perini reiterated this position at oral argument.[34] While

---

[32] Demand ¶ 110(b).

[33] Def.'s Answering Br. 44–45.

[34] *See also* Oral Arg. Tr. 35–36 (THE COURT: "So with that said, to clean it up, why not concede, at least as to, I think, Count VI, that the earn-out payment or rights to an earn-out payment are not subject to arbitration?" MR. RALSTON: "We're fine with that. The mechanics of the earn-out payment, whether it is owed under the merger agreement to interest holders—we, obviously, have an argument that we have damages, and whatever pro rata portion, to the extent there is an earn-out payment in the future, Mr. Segal will just have to pay that back to us. And that's really what we're getting at in the arbitration demand. But in terms of—in other words, seeking an order from the arbitrator that no earn-out payments are owed under the merger agreement, that's—inartful pleading, I guess, is the way that I would characterize the arbitration demand in that respect." THE COURT:

I do not follow the strategic logic, in this case, I do not have to. Both parties have acknowledged that any party's right to an earn-out is subject only to the Merger Agreement and cannot be arbitrated absent further agreement of the of the parties. In my view, that ends the inquiry.

The same does not hold true with respect to the so-called Indemnification Claims and the Consequential Damages Claim. In the Demand, Five Star and Tutor Perini allege a long-running and factually complex course of wrongdoing by Segal with improper conduct occurring both pre-merger and post-merger. Plaintiffs are correct that many of the allegations of wrongdoing in the Demand might well relate to potential liability issues that were investigated as part of the negotiation of the Merger Agreement. I also acknowledge that the Merger Agreement sets forth detailed procedures for seeking indemnification and contains potentially applicable liability caps. In Plaintiffs' view, Tutor Perini and Five Star are trying to bypass these highly negotiated mechanisms, most importantly, the monetary caps. Tutor Perini maintains that the damages sought in arbitration are based on various allegations of misconduct relating to Segal's employment and other breaches of the Employment Agreement that are not the subject of the indemnification provisions or consequential damages caps in the Merger Agreement.

---

"So at least—" MR. RALSTON: "So I'll concede, at least on that, that is a claim that, if taken literally or characterized the way that Mr. Nachbar has characterized it in his papers, which was not the intent of the pleading, is beyond the scope of the arbitration provision.").

19

A review of the Demand suggests that Tutor Perini's characterization of its claims, and its arguments regarding arbitrability with respect to these claims, is not frivolous. At this stage, that is all that is required.[35] It is for the arbitrator to determine whether the Indemnification Claims and the Consequential Damages Claim arise under the Employee Agreement, the Merger Agreement or, perhaps, both. And it is for the arbitrator to determine whether the claims are arbitrable. To go further in characterizing the allegations in the Demand or considering the merits of the claims set forth there would risk essentially deciding the issue of substantive arbitrability. This would infringe upon the jurisdiction of the arbitrator.[36]

## III. CONCLUSION

Because the arbitration provision within the Employment Agreement provides generally that all disputes arising out the agreement should be subject to arbitration

---

[35] *McLaughlin*, 942 A.2d at 626–27.

[36] *Id.* at 623 (observing that once the court determines the agreement at issue requires the arbitrator to decide substantive arbitrability, "the trial court is not required to delve into the scope of the arbitration clause and the details of the contract and pending lawsuit—that is the job of the arbitrator."); *see also Li*, 2013 WL 1286202, at *5 ("Delaware courts have necessarily limited the preliminary evaluation step to determining whether there is no non-frivolous argument; otherwise a court would be deciding the first-order question of substantive arbitrability before deciding the second-order question of who decides substantive arbitrability."); *3850 & 3860 Colonial Blvd., LLC v. Griffin*, 2015 WL 894928, at *7 (Del. Ch. Feb. 26, 2015) ("Nonetheless, the Court must be careful not to conflate [the non-frivolous] analysis with the ultimate question of whether the underlying claims relate to or arise out of the agreement.") (internal citation omitted).

and incorporates a set of arbitration rules that empower the arbitrator to decide arbitrability, I am satisfied under *Willie Gary* that there is clear and unmistakable evidence that the parties intended to arbitrate arbitrability. I am also satisfied under *McLaughlin* that there has not been a clear showing that the party desiring arbitration (Tutor Perini) has essentially no non-frivolous argument about substantive arbitrability to make before the arbitrator as to the claims addressed in Counts VII and VIII of Plaintiffs' Complaint. Mr. Segal, as a signatory to the Employment Agreement, must address his arguments against arbitrability to the arbitrator.

Plaintiffs' Motion for Judgment on the Pleadings is GRANTED with respect to Count VI of the Complaint and DENIED with respect to Counts VII and VIII of the Complaint.

**IT IS SO ORDERED.**